2008 UT App 95

**Mark HOPKINS and Kathy Hopkins dba Elkridge Financial, Plaintiffs and Appellants,**

v.

**Bill HALES, Defendant and Appellee.**

No. 20060787–CA.

Court of Appeals of Utah.

March 20, 2008.

D. Bruce Oliver, Salt Lake City, for Appellants.

Stanford A. Graham, Salt Lake City, for Appellee.

Before THORNE, Associate P.J., BENCH and BILLINGS, JJ.

## OPINION

BILLINGS, Judge:

¶ 1 Plaintiffs Mark and Kathy Hopkins appeal from the trial court's award of attorney fees to Defendant Bill Hales following an evidentiary hearing on the Hopkinses' motion for a temporary restraining order against Hales. The trial court concluded that the noncompete agreement Hales signed with the Hopkinses was unenforceable and awarded Hales attorney fees. The Hopkinses appeal the issue of attorney fees. We reverse.

## BACKGROUND

¶ 2 The Hopkinses are the sole proprietors of Elkridge Financial (Elkridge), which provides mortgage broker services. In March 1999, Hales began working for Elkridge as an independent contractor and consultant. At that time, Elkridge did not provide Hales with a written employment agreement. In May of that year, the Hopkinses presented Hales with a noncompete agreement and a nondisclosure agreement. The noncompete agreement included a time restraint of five years and a geographical restriction of a 100-mile radius from Elkridge's main office in Gunnison, Utah. The Hopkinses told Hales that if he signed the agreements, they would promote him in the business, increase his compensation, and provide him with certain benefits, including health insurance. Hales signed the agreements. The Hopkinses never fulfilled their promises despite Mrs. Hopkins's repeated assurances that it would be taken care of "very soon."

¶ 3 Prior to Hales's employment, the Hopkinses decided to open an office in Richfield, Utah. The Richfield office was opened in April 1999 and Mr. Hopkins ran it. In August 1999, the Hopkinses made Hales the "manager" of the Richfield office, and he began running it alone.

¶ 4 In September 1999, Mr. Hopkins told Hales to look for new work because Elkridge was unable to pay him and because the Hopkinses were dissatisfied with his performance. Hales began looking for new employment but was unable to find anything. He stayed with Elkridge until December 1999 when he was fired following a disagreement with Mrs. Hopkins. Hales found new employment with a different mortgage broker about three weeks later.

¶ 5 Following Hales's new employment, the Hopkinses filed a complaint against him for breach of the noncompete and nondisclosure agreements. They also filed a motion for a temporary restraining order and injunction against him, seeking to prevent Hales from soliciting loans for five years within a 100-mile radius—an area of 31,400 square miles.

¶ 6 The trial court entered an order determining that the noncompete and nondisclo-

sure agreements were unenforceable, and refused to issue a temporary restraining order or preliminary injunction. Among other things, the trial court found:

1. The noncompete agreement was provided to Hales after [the] time of his initial employment. Although he was promised additional benefits and compensation to entice him to sign the noncompete and nondisclosure agreements, none of those benefits or increased compensation was ever provided. Therefore, the noncompete and nondisclosure agreements were not supported by consideration and are therefore unenforceable.

2. The noncompete and nondisclosure agreements were not negotiable but were provided to Hales in a take it or leave it fashion. *Moreover, Hopkins engaged in bad faith negotiations by promising consideration in exchange for Hales'[s] signature and thereafter failing to provide that consideration.*

(Emphasis added.) The trial court awarded attorney fees to Hales. The Hopkinses appeal only the award of attorney fees.

## ISSUE AND STANDARD OF REVIEW

¶ 7 The Hopkinses assert that the award of attorney fees to Hales was improper. Specifically, the Hopkinses argue that the underlying claim was not pursued in bad faith and, therefore, attorney fees are inappropriate under Utah Code section 78–27–56(1). *See* Utah Code Ann. § 78–27–56(1) (2002).[1] The trial court's determination that the Hopkinses' claim was filed in bad faith is a question of fact that we review under a "clearly erroneous" standard. *Jeschke v. Willis,* 811 P.2d 202, 204 (Utah Ct.App.1991).

## ANALYSIS

¶ 8 Attorney fees may be awarded "if the court determines that the action ... was without merit and not brought or asserted in good faith." Utah Code Ann. § 78–27–56. We resolve this issue on the question of good faith and need not reach the issue of whether the action was without merit.

¶ 9 The Hopkinses contend their lawsuit was brought in good faith. They assert that they believed the agreements were enforceable, though they may have made "mistakes" in not providing the benefits they promised to Hales before the litigation began. In essence, the Hopkinses claim their conduct in negotiating the contract is not relevant to whether "the action was ... brought in good faith." We agree.

¶ 10 In *Jeschke v. Willis,* 811 P.2d 202 (Utah Ct.App.1991), we upheld a trial court's determination that a party had acted in bad faith when he sued for injuries, alleging in the lawsuit they were sustained in one accident when actually they had been sustained in another. *See id.* at 204. We affirmed because "Jeschke knew he had no factual basis for his claims" and made misrepresentations during the litigation. *Id.*

¶ 11 Here, the trial court's finding of bad faith does not link the bad faith conduct to the litigation. The court's bad faith findings identify only pre-litigation conduct. This is not the type of bad faith required for the award of attorney fees under Utah Code section 78–27–56(1). *See* Utah Code Ann. § 78–27–56(1); *see also Morganroth & Morganroth v. DeLorean,* 213 F.3d 1301, 1318 (10th Cir.2000) (holding that "[p]relitigation conduct alone ... cannot support an award of attorney[ ] fees" where trial judge stated attorney fees were not based on conduct in litigation but on previous fraudulent conduct which gave rise to the cause of action); *Faust v. KAI Techs.,* 2000 UT 82, ¶ 16, 15 P.3d 1266 (determining that it is not enough that defendant may have acted in bad faith at times in settlement negotiations).

---

1. Because we reverse on the issue of "bad faith," we do not address the remaining issues, which include whether Hales's motion for attorney fees was timely under Utah Rule of Civil Procedure 54, whether the suit was "without merit," or whether the time spent by Hales's counsel was unreasonable. We also do not address the Hopkinses' argument that attorney fees should not be awarded under Utah Code section 78–27–56.5, which allows for attorney fees to be awarded to a prevailing party if the contract in question so provides, *see* Utah Code Ann. § 78–27–56.5 (2002). The Hopkinses allege that because neither the noncompete agreement nor the nondisclosure agreement provided for an award of attorney fees, attorney fees were not appropriate under this statute. We agree, but do not address the merits of this argument.

¶ 12 The trial judge did not make any finding that the Hopkinses were untruthful during the litigation. Neither did the trial court find that the Hopkinses "lacked an honest belief in the propriety of the activities in question," *Valcarce v. Fitzgerald*, 961 P.2d 305, 316 (Utah 1998). Therefore, we reverse the award of attorney fees to Hales.

## CONCLUSION

¶ 13 We reverse the trial court's award of attorney fees because we conclude the Hopkinses' action to enforce the noncompete and nondisclosure agreements was not brought in bad faith.

¶ 14 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge and RUSSELL W. BENCH, Judge.