2009 UT App 185

**Bruce EDWARDS, Plaintiff and Appellant,**

v.

**POWDER MOUNTAIN WATER AND SEWER; Alvin Cobabe; Jamie Lythgoe; Jamie Lythgoe dba Powder Mountain Water and Sewer; June Cobabe; Chuck Panter; Joann Panter; Susan Lowther; Lavar Lowther; Ray W. Moss; Merlin J. Tomlinson; Elery Voge; Clair Van**

Meeterren; Wayne Stokes; Kim Remmash; Julie Batchelor; Powder Mountain, Inc.; Powder Mountain West Landowners Association; Gary L. Jacobs; Gordon James; and John Does 1–25, Defendants and Appellees.

No. 20080144–CA.

Court of Appeals of Utah.

July 9, 2009.

---

Bruce Edwards, Ogden, Appellant Pro Se.

Steven W. Allred, Salt Lake City, for Appellees.

Before Judges THORNE, DAVIS, and McHUGH.

## OPINION

McHUGH, Judge:

¶1 Bruce Edwards appeals the trial court's grant of summary judgment in favor of Powder Mountain Water and Sewer (the District) [1] and its order of sanctions, including a $500 fine and dismissal of the remainder of Edwards's complaint against the District, Powder Mountain, Inc. (Powder Mountain), and Powder Mountain West Landowners Association (collectively, Defendants). Edwards further challenges the trial court's discovery and procedural rulings, its award of attorney fees to the District and Powder Mountain, and the trial court's refusal to disqualify Judge Ernest W. Jones for bias.

¶2 The District claims that Edwards lacks standing to challenge the legality of the certified fees underlying the trial court action. Consequently, it argues, this court does not have jurisdiction to hear the appeal. In the alternative, the District asserts that we should affirm the trial court's rulings because Edwards's arguments lack merit.

¶3 We dismiss Edwards's claims regarding the certified fees for lack of standing; dismiss as moot his challenge to the grant of summary judgment on the issue of the prior liens; and affirm the order of sanctions, the award of attorney fees, and the denial of Edwards's request for disqualification of Judge Jones.

## BACKGROUND

¶4 In 1979, Powder Mountain, as the seller, entered into a Real Estate Purchase Contract (the REPC) with Harry Schmalz and Glenn Paysar, as the buyers, to purchase property in Weber County (the Property). In 1981, Schmalz and Paysar assigned their rights and interests in the Property to Edwards. Edwards has never improved the Property but claims he has fully complied with the terms and conditions of the REPC.

¶5 Weber County established the District, pursuant to Utah Code section 17-6-1, as a county improvement district for water and sewer. *See* Utah Code Ann. § 17-6-1 (1973) (current version as amended at Utah Code Ann. § 17B-2a-403 (Supp.2008)). In June 1985, the District provided Edwards with a "Fee Schedule and Agreement" for both water and sewer. Edwards declined to sign either agreement. When he received his first bill in July 1985, Edwards refused to pay because he believed that "the interest rate exceed[ed] the rate provided by law and that numerous other terms ... were in violation of Utah Code." From that time forward, Edwards has refused to pay any of the sewer and water fees assessed by the District. In July 1989, Edwards's connection rights to water and sewer were terminated. The District continued to bill him for water and sewer service until March 1990.

¶6 The District filed two liens (the Original Liens) against the Property to secure payment of the water and sewer fees. The first lien was filed in February 1995, and the second lien was placed on the Property in April 1998. The District twice attempted to foreclose on these liens. The first action was dismissed due to a procedural defect, and the second was voluntarily dismissed with prejudice by the District. The District opted instead to certify the unpaid assessments to the county treasurer's office for collection. *See generally* Utah Code Ann. § 17A-2-310(3) (1999) (repealed 2007) (allowing a district to certify unpaid water and sewer fees for collection like a general county tax). In May 2001 or 2002,[2] the District certified $24,120 to the Weber County Treasurer, which resulted in a lien on Edwards's property (the Certified Lien). That lien remains unpaid.

¶7 In March 2006, Edwards filed a complaint, asserting thirty-one causes of action against twenty defendants.[3] On December 6, 2006, the trial court granted summary judgment in favor of the District on three issues:

---

1. Although there were twenty defendants named in the original complaint, only the District and its board members have responded to Edwards's appeal. We refer to the District and its board members collectively as "the District."

2. The year that certification occurred is in dispute. This factual issue, however, is immaterial to resolution of this appeal.

3. *See supra* note 1.

(1) whether the Original Liens are void, (2) whether Edwards's challenges to the legality of the Original Liens are barred by the statute of limitations and the compulsory counterclaim rule, and (3) whether certification of the unpaid assessments to the county treasurer and attachment of the Certified Lien were authorized.

¶ 8 In a written order entered the next day, the trial court ordered a show cause hearing to determine whether sanctions were warranted under rule 11 of the Utah Rules of Civil Procedure (the Rule 11 Hearing). Following the Rule 11 Hearing, the trial court determined that Edwards filed the complaint to harass Defendants and to increase their costs of litigation. Ultimately, it concluded that Edwards presented only one valid cause of action-the Certified Lien issue. Accordingly, the court dismissed the remainder of Edwards's complaint without prejudice and sanctioned Edwards $500. The trial court also awarded attorney fees to the District and Powder Mountain pursuant to Utah Code section 78B–5–825, *see* Utah Code Ann. § 78B–5–825 (2008) (mandating an award of attorney fees where an action is without merit and was not asserted in good faith).[4]

¶ 9 On appeal, Edwards challenges the order granting summary judgment in favor of the District, the sanction imposed under rule 11, the failure to disqualify Judge Jones, various discovery rulings, and the award of attorney fees. He does not challenge the dismissal of his other causes of action except to the extent that he contends that dismissal of his complaint was an inappropriate sanction.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 10 The District argues that Edwards lacks standing to challenge the legality of the assessments because he failed to pay the Certified Lien under protest. Whether a party has standing is primarily a question of law, which we review for correctness. *See Washington County Water Conservancy Dist. v. Morgan,* 2003 UT 58, ¶ 7, 82 P.3d 1125.

¶ 11 Edwards contends that the trial court erroneously granted summary judgment in favor of the District and denied his motions for summary judgment. Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). The grant of summary judgment is a question of law, and we review the trial court's determination of legal issues for correctness, affording no deference to the trial court. *See Forsberg v. Bovis Lend Lease, Inc.,* 2008 UT App 146, ¶ 7, 184 P.3d 610, *cert. denied,* 199 P.3d 367 (Utah 2008).

■ ¶ 12 Edwards next argues that the trial court improperly sanctioned him. When considering the propriety of rule 11 sanctions, we must first "review the trial court's determination that rule 11 has ... been violated under a correctness standard, giving no deference to the trial court's determination but upholding [its] findings of fact unless contrary to the clear weight of the evidence." *Kaiserman Assocs., Inc. v. Francis Town,* 977 P.2d 462, 464 (Utah 1998) (internal quotation marks omitted). Then, we consider the appropriateness of the sanction under an abuse-of-discretion standard. *See id.* We will, however, review challenges to an interpretation of a rule of procedure for correctness. *See Ostler v. Buhler,* 1999 UT 99, ¶ 5, 989 P.2d 1073.

■ ¶ 13 Edwards also challenges the award of attorney fees under Utah Code section 78B–5–825. "[W]hether ... a claim was brought in bad faith is a question of fact [that] we review ... under a clearly erroneous standard." *Still Standing Stable, LLC v. Allen,* 2005 UT 46, ¶ 8, 122 P.3d 556 (second alteration and second omission in original) (internal quotation marks omitted). The trial court's determination that an action lacks merit, however, is a question of law, which we review for correctness. *See Pennington v. Allstate Ins. Co.,* 973 P.2d 932, 939 n. 3 (Utah 1998).

---

**4.** We cite to the current version of the code because the 2008 recodification of title 78 made no substantive revisions to this section. *See* Utah Code Ann. § 78B–5–825 amendment notes (2008).

¶ 14 Edwards's final argument is that the trial court improperly determined that neither recusal nor disqualification of Judge Jones was required. "Determining whether a trial judge committed error by failing to recuse himself . . . is a question of law, and we review such questions for correctness." *Lunt v. Lance,* 2008 UT App 192, ¶ 7, 186 P.3d 978 (omission in original) (internal quotation marks omitted). Motions to disqualify a judge are governed by rule 63 of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 63. We review the interpretation and application of a rule of procedure for correctness. *See Ostler,* 1999 UT 99, ¶ 5.

## ANALYSIS

### I. Standing to Challenge the Certified Lien

¶ 15 "[S]tanding is a jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties." *Jones v. Barlow,* 2007 UT 20, ¶ 12, 154 P.3d 808 (alteration in original) (internal quotation marks omitted). Because standing is jurisdictional, it may be raised for the first time on appeal. *See Harris v. Springville City,* 712 P.2d 188, 190 (Utah 1986).

¶ 16 The District argues that Edwards lacks standing to challenge the trial court's rulings regarding the Certified Lien because Edwards failed to pay the certified fees under protest before bringing his action. To support this contention, the District relies first upon the language of the Utah Code in effect at the time the District certified Edwards's delinquent fees. Utah Code section 17A–2–310(3), which has since been repealed, provided,

> Whether or not a district operates a waterworks system, any unpaid and delinquent charges for sewer and water service shall be certified by the clerk of the district to the treasurer or assessor of the county in which the delinquent premises are located. The amount of the delinquent charges, together with interest and penalties, shall

immediately upon the certification become a lien on the delinquent premises *on a parity with and collectible at the same time and in the same manner as general county taxes are a lien on the premises and are collectible.* All methods of enforcement available for the collection of general county taxes, including sale of the delinquent premises, shall be available and shall be used in the collection of the delinquent sewer charges.

Utah Code Ann. § 17A–2–310(3) (1999) (repealed 2007) (emphasis added).

¶ 17 The District then argues that if the delinquent charges are "on a parity with and collectible at the same time and in the same manner as general county taxes," *id.,* Edwards must comply with Utah Code section 59–2–1327, which states,

> Where a tax is demanded or enforced by a taxing entity, and the person whose property is taxed claims the tax is unlawful, *that person may pay the tax under protest to the county treasurer. The person may then bring an action in district court* against the officer or taxing entity to recover the tax or any portion of the tax paid under protest.

Utah Code Ann. § 59–2–1327 (2008) (emphasis added);[5] *see also Woodbury Amsource, Inc. v. Salt Lake County,* 2003 UT 28, ¶ 12, 73 P.3d 362 (interpreting section 59–2–1327 to require a taxpayer to pay under protest before obtaining standing to challenge the legality of the tax). *See generally Forsberg v. Bovis Lend Lease, Inc.,* 2008 UT App 146, ¶ 9, 184 P.3d 610 ("Where the right at issue is one created by statute, 'the law creating that right can also prescribe the conditions of its enforcement.'" (quoting *State Farm Mut. Auto. Ins. Co. v. Clyde,* 920 P.2d 1183, 1185 (Utah 1996))), *cert. denied,* 199 P.3d 367 (Utah 2008). Relying on these statutes, the District argues that Edwards must pay the certified charges before he may challenge their legality.

¶ 18 Edwards counters that the fees charged by the District for water and sewer

---

5. For the reader's convenience, we cite to the 2008 codification of title 59 because the relevant portions of the pertinent sections remain unchanged from the version of title 59 in effect when Edwards filed his complaint.

are not taxes. Edwards bases his argument on the Utah Supreme Court's holding in *Ponderosa One Ltd. Partnership v. Salt Lake City Suburban Sanitary District*, 738 P.2d 635 (Utah 1987), that "[s]ewer charges and fees are not taxes or special assessments, but are in the nature of tolls or rents paid for services furnished or available." *Id.* at 637 (internal quotation marks omitted).

¶ 19 We agree with Edwards that water and sewer fees are not taxes. Nevertheless, section 17A–2–310(3) gave county improvement districts the authority to certify those fees for collection, thereby creating a lien that is "on a parity with and collectible at the same time and in the same manner as general county taxes." Utah Code Ann. § 17A–2–310(3). Thus, the language in section 17A–2–310(3) equated a certified lien for water and sewer charges to a county tax lien subject to the "Collection of Taxes" provisions in title 59, chapter 2, part 13, *see* Utah Code Ann. §§ 59–2–1301 to –1372 (2008).[6] Because section 59–2–1327 explicitly requires that a taxpayer pay the tax before he has standing to challenge its legality, we agree with the District that Edwards lacks standing to challenge the Certified Lien.

¶ 20 Edwards denies that payment under protest is necessary, citing *Woodbury Amsource, Inc. v. Salt Lake County*, 2003 UT 28, 73 P.3d 362. The issue there, however, was whether Woodbury, after paying the tax without protest, could nevertheless seek a refund. *See id.* ¶ 5 (discussing the version of Utah Code section 59–2–1321 then in effect, which permitted a non-protesting taxpayer to obtain a refund of a tax paid under certain

limited circumstances). After distinguishing section 59–2–1327 because the taxpayer had not paid the tax under protest, the *Woodbury* court held that the taxpayer's claim, based primarily on the valuation of the property, could not be brought under the narrow circumstances governed by section 59–2–1321. *See id.* ¶¶ 15–16, 19. Consequently, the supreme court dismissed the action. *See id.* ¶ 19. Here, Edwards did not simply pay the certified fees without protest; he did not pay them at all. Thus, *Woodbury* is not controlling, and Edwards lacks standing to challenge the fees under sections 59–2–1321 or 59–2–1327.

## II. The Remaining Claims

¶ 21 Our inquiry does not end with our conclusion that Edwards lacks standing to challenge the Certified Lien. When a party lacks standing to pursue the merits of his complaint, the trial court retains jurisdiction to dismiss that complaint and to attend to court business and discharge its duties. *See Western Water, LLC v. Olds*, 2008 UT 18, ¶ 42, 184 P.3d 578 (stating that a trial court "has inherent power 'to make, modify, and enforce rules for the regulation of the business before [it], ... to recall and control its process, [and] to direct and control its officers, including attorneys and such'" (alterations and omission in original) (quoting *In re Evans*, 42 Utah 282, 130 P. 217, 224 (1913))). Because the trial court retained jurisdiction to enter the orders regarding sanctions and attorney fees, we review those rulings.[7]

---

6. Our interpretation is influenced by the fact that the same certification authority was granted to County Service Areas in part 4 of the same title that governs County Improvement Districts, *see* Utah Code Ann. § 17A–2–416 (1999) (repealed 2007). Section 17A–2–416 contains a specific reference to title 59, chapter 2, part 13. *See id.* (including within its reference to the "Collection of Taxes" provision, section 59–2–1327, which requires prepayment before suit).

7. We reject as moot Edwards's challenge to the trial court's conclusion that his claims regarding the Original Liens were barred by the statute of limitations and the compulsory counterclaim rule. The District dismissed its action to foreclose on those liens with prejudice, thereby waiving any rights related to them. *See generally*

*Winters v. Schulman*, 1999 UT App 119, ¶ 11, 977 P.2d 1218 (stating that a claim is moot when "judicial relief cannot affect the rights of the litigants" (internal quotation marks omitted)). Furthermore, although Edwards pleaded a myriad of other causes of action sounding in contract, tort, and equity, he fails to assert that he suffered any damage caused by the temporary placement of the Original Liens on the Property. *See generally Jensen v. Sawyers*, 2005 UT 81, ¶ 35, 130 P.3d 325 (identifying damages as an essential element of a defamation claim); *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35 (same for fraud claim); *Interwest Constr. v. Palmer*, 923 P.2d 1350, 1356 (Utah 1996) (same for negligence claim); *Eleopulos v. McFarland & Hullinger, LLC*, 2006 UT App 352, ¶ 10, 145 P.3d 1157 (same for a breach of contract claim);

## A. Rule 11 Sanction

¶ 22 Edwards challenges the propriety of the sanction imposed by the trial court. In particular, Edwards argues that the trial court exceeded its discretion when it fined him $500 and dismissed his complaint.

¶ 23 Edwards first argues that the trial court erred in holding the Rule 11 Hearing on its own motion because the court's articulated concerns suggest bias. Rule 11, however, permits a court to order a party to demonstrate that he is in compliance with its provisions. *See* Utah R. Civ. P. 11(c)(1)(B).[8] As part of that order, a court must describe the conduct it believes violates subsection (b) of rule 11. *See id.* The trial court made such an order, which identified the court's concerns and offered Edwards an opportunity to demonstrate that those concerns were unfounded. Accordingly, we conclude that the trial court's sua sponte decision to hold the Rule 11 Hearing was proper.

¶ 24 Edwards next claims that the trial court erred in determining that rule 11 had been violated. A decision that a party has violated rule 11 must be based on an objective review of the evidence. *See In re R.N.L.*, 913 P.2d 761, 763 (Utah Ct.App. 1996). After the Rule 11 Hearing, the trial court entered express findings to support its conclusion that Edwards violated rule 11. Specifically, the trial court found that Edwards asserted thirty-one causes of action against twenty individual defendants and that many of the actions lacked a "factual or legal basis" and were pleaded with "allegations of fact that lack[ed] any evidentiary support." The trial court also found that Edwards added approximately twenty-four causes of action to his primary lien claim solely for the purposes of harassing Defendants and increasing the costs of defense.

¶ 25 We must uphold a trial court's factual findings regarding whether rule 11 has been violated unless the evidence clearly weighs against such findings. *See Kaiserman Assocs., Inc. v. Francis Town*, 977 P.2d 462, 464 (Utah 1998). The record here indicates that Edwards filed seven motions for partial summary judgment, three of which were filed on the same date. Further, Edwards served Defendants with 458 requests for admissions. After Defendants moved for a protective order, the trial court limited Edwards's requests for admissions to fifty. However, Edwards never identified the fifty requests he wanted Defendants to admit.[9] In addition, Edwards has failed to provide this court with transcripts from either the Rule 11 Hearing or the oral arguments on the protective order, where he may have explained his behavior. "In the absence of a record which allows us to review the assigned errors, we must presume that the trial court's ruling was founded on admissible, competent, substantial evidence." *Burke v. Burke*, 733 P.2d 498, 498 (Utah 1986). Based on the findings the trial court relied upon in reaching its conclusion and the absence of any record evidence to refute those findings, we affirm the trial court's conclusion that Edwards violated rule 11.

¶ 26 Finally, Edwards challenges the propriety of the sanction imposed by the trial court because it ordered both the dismissal of his complaint-without prejudice-and a fine. Edwards contends that rule 11 permits a trial court to order only one sanction. Rule 11(c) provides for "impos[ition of] *an appropriate sanction* upon the attorneys, law firms, or parties." Utah R. Civ. P. 11(c) (emphasis added). It continues,

A *sanction* imposed for violation of this rule … may consist of, or include, directives of a nonmonetary nature, an order

*Hatch v. Davis*, 2004 UT App 378, ¶ 40, 102 P.3d 774 (same for intentional infliction of emotional distress claim). Thus, those claims were properly dismissed.

8. Rule 11(b) prohibits, inter alia, an unrepresented party from filing a pleading for an improper purpose—such as to harass the other party, delay the proceedings, or unnecessarily increase the cost of litigation—or from making allegations that lack evidentiary support. *See* Utah R. Civ. P. 11(b)(1), (3).

9. Although Edwards now challenges the trial court's limitation of his requests for admissions, the fact that he never complied with the trial court's order suggests his motivation was indeed to harass Defendants or to increase their costs of litigation rather than to obtain information relevant to the prosecution of his claims.

to pay a penalty into court, *or*, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney fees and other expenses incurred as a direct result of the violation.

*Id.* R. 11(c)(2) (emphases added). Edwards asserts that rule 11's use of the singular form of sanction and the disjunctive "or" between the examples of appropriate sanctions limits a trial court's power to the imposition of a single sanction. We disagree.

¶ 27 "[R]ule 11 gives trial courts great leeway to tailor the sanction to fit the requirements of the particular case." *R & R Energies v. Mother Earth Indus., Inc.*, 936 P.2d 1068, 1080 (Utah 1997). The rule provides trial courts with a list of punishments from which an appropriate sanction may be tailored. *See* Utah R. Civ. P. 11(c)(2). There is nothing in the rule that precludes a trial court from combining the options available to fashion the sanction most appropriate for the particular violation of rule 11 at issue. *See id.* R. 11(c). Further, appellate courts afford trial courts considerable discretion to determine what sanction will be most effective to deter undesirable conduct. *See Archuleta v. Galetka*, 2008 UT 76, ¶ 7, 197 P.3d 650; *see also Kaiserman Assocs.*, 977 P.2d at 464 (holding that in the absence of an abuse of discretion, an appellate court will not disturb the trial court's sanction order). The trial court's use of a combination of the punishments enumerated in the rule to fashion an appropriate sanction in this case, particularly where the dismissal of the complaint was without prejudice, was not error.[10]

## B. Attorney Fees

¶ 28 Edwards next challenges the award of attorney fees. First, he asserts that the District and Powder Mountain failed to submit their written briefs regarding attorney fees under Utah Code section 78B–5–825

within the deadline set by the trial court. Edwards also contends that "[t]he court ha[d] no authority to award any attorney fees based upon Utah Code [section 78B–5–825]" because "[t]here was no finding that the case was without merit."[11] *See generally* Utah Code Ann. § 78B–5–825(1) (2008) (requiring a trial court to award attorney fees to the prevailing party in civil actions where "the action was without merit and not brought or asserted in good faith"). We are not persuaded by either of these arguments.

¶ 29 At the Rule 11 Hearing, the trial court ordered the District and Powder Mountain to submit briefs and affidavits regarding the attorney fees issue by June 20, 2007. On July 20, 2007, the trial court denied attorney fees under rule 11 but invited a request for fees pursuant to Utah Code section 78B–5–825. The trial court did not impose any deadline for those motions. Counsel for the District filed a motion and supporting memorandum for attorney fees under section 78B–5–825 on September 6, 2007, and Powder Mountain's counsel joined in the District's request for fees on October 1, 2007. Although aware of Edwards's objection to the motions on the ground that they were not filed before the June 20 deadline, the trial court awarded attorney fees to the District and Powder Mountain. Under these circumstances, we reject Edwards's argument that the motion for attorney fees was untimely.

¶ 30 Edwards also argues that attorney fees were improperly awarded because the trial court's Order to Show Cause, which states that "the expense of defending against so many meritless claims significantly burdens the defendants," did not adequately determine that the action lacked merit. The trial court, however, expressly concluded that Edwards's "complaint was without merit" in its memorandum decision awarding the attor-

---

10. Because we hold that Edwards lacks standing to challenge the trial court's grant of summary judgment on the Certified Lien claims and we conclude that the court imposed an appropriate sanction in dismissing the remaining claims, we need not consider Edwards's challenge to the trial court's discovery orders.

11. Edwards raises other issues regarding the award of attorney fees but fails to provide any support for his arguments. Accordingly, we do not consider those arguments. *See* Utah R.App. P. 24; *Allen v. Friel*, 2008 UT 56, ¶¶ 9, 16, 194 P.3d 903 (declining to address issues raised by a pro se appellant where appellant failed to cite any authorities to support his claims).

ney fees. Accordingly, we reject Edwards's argument that the trial court failed to enter a proper conclusion in support of its award under Utah Code section 78B–5–825.

## C. Disqualification/Recusal

¶ 31 Finally, Edwards asserts numerous allegations of bias against the Judge Jones, which allegations he claims warranted recusal or disqualification. Judge Jones certified Edwards's motion to disqualify to the Second District's presiding judge and stayed the proceedings, as required by rule 63 of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 63. The presiding judge assigned the motion to Judge W. Brent West for review. Three weeks later, Judge West issued a decision denying Edwards's motion because Edwards's allegations failed to establish any bias or prejudice.[12] Judge West held that bias cannot be inferred from an adverse ruling, *see In re Affidavit of Bias*, 947 P.2d 1152, 1154 (Utah 1997), or upon the trial court's decision to order a show cause hearing to address conduct that appeared to violate rule 11. We agree that the trial court properly invoked rule 63 and the evidence available to us in the record supports Judge West's findings and conclusions.

## CONCLUSION

¶ 32 We dismiss Edwards's request for appellate review of the grant of summary judgment in favor of the District because Edwards lacks standing to challenge the Certified Lien and his claims relating to the Original Liens are moot. Due to those conclusions, we need not address Edwards's challenge to the trial court's discovery orders. We affirm the order of sanctions against Edwards, the award of attorney fees to the District and Powder Mountain, and the denial of Edwards's motion for disqualification of Judge Jones.

¶ 33 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge, and JAMES Z. DAVIS, Judge.

---

12. Edwards's disqualification claims were based upon Judge Jones's adverse ruling on Edwards's motions for summary judgment, his past membership on the Powder Mountain Ski Patrol, and his sua sponte order for a rule 11 hearing.