2011 UT App 438

**Darrell LONG, Plaintiff, Appellee, and Cross-appellant,**

v.

**J.D. STUTESMAN and Allan Hatz, Defendants, Appellant, and Cross-appellee.**

No. 20090974–CA.

Court of Appeals of Utah.

Dec. 22, 2011.

Nathan E. Burdsal and Hutch U. Fale, Orem, for Appellant and Cross-appellee.

Denver C. Snuffer Jr., Sandy, for Appellee and Cross-appellant.

Before Judges THORNE, VOROS, and CHRISTIANSEN.

## OPINION

CHRISTIANSEN, Judge:

¶ 1 This case arises from defendant J.D. Stutesman's sale of an airplane to plaintiff Darrell Long. After a two-day bench trial in February 2009, the trial court concluded, inter alia, that Long succeeded in proving fraud against Stutesman but failed to prove the same against defendant Allan Hatz. The trial court entered a judgment against Stutesman for $32,468.35, including costs but not including attorney fees or punitive damages. On appeal, Stutesman challenges the trial court's conclusion that he defrauded Long. He also challenges the trial court's award of damages and costs to Long. On cross-appeal, Long challenges the trial court's denial of attorney fees and punitive damages, as well as the trial court's conclusion that he failed to present sufficient evidence to prove that Hatz defrauded him. We affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND[1]

¶ 2 In 2006, Stutesman advertised the sale of his 1960 Bellanca aircraft. In the advertisements, Stutesman represented that he would sell his aircraft with a "fresh annual" inspection, meaning that it would undergo an annual Federal Aviation Administration (FAA) airworthiness inspection. Long became interested in purchasing the aircraft after he saw one of the advertisements. In August 2006, Stutesman and Long agreed upon a $28,000 purchase price, and Long paid Stutesman a ten percent deposit.

¶ 3 Hatz, a certified aircraft mechanic and inspector, performed an annual inspection on the aircraft in two phases over three months, which he ultimately completed on September 13, 2006. Although Hatz certified that the

aircraft was airworthy, he admitted during his trial testimony that he "knew at the time the aircraft was not airworthy." Because the FAA determined that Hatz's airworthiness certification did not meet FAA standards, it later suspended Hatz's inspection certification for six months.

¶ 4 On September 29, 2006, Stutesman disclosed to Long that the aircraft had a cracked windshield and was missing an oil inspection hatch cover. Hatz had discovered these defects during the inspection, and Stutesman had not fixed them. Stutesman also gave Long the aircraft's logbooks in which Hatz had certified the airworthiness of the aircraft. The next day, Stutesman and Long entered into an agreement for the sale and purchase of the aircraft for $27,700. Later that day, Long was attempting to land his newly-purchased aircraft for a second time when the landing gear malfunctioned and caused the aircraft to crash.

¶ 5 Long filed an action against Stutesman and Hatz, alleging conversion, breach of contract, and fraud. The trial court partially granted Hatz's summary judgment and dismissed Long's conversion and breach of contract claims against Hatz. A two-day bench trial ensued on Long's three claims against Stutesman and on Long's fraud claim against Hatz.

¶ 6 At trial, Long testified that he relied on Stutesman's advertisements, the aircraft's logbooks, and the fresh annual inspection in deciding to purchase the aircraft. In the advertisements, Stutesman represented that a fresh annual inspection would occur, and in the logbooks he represented that a fresh annual inspection had occurred. Long testified that Stutesman never disclosed to him that two days before the sale Stutesman had replaced the aircraft battery with a car battery. Long's expert witness testified that a proper fresh annual inspection would have uncovered the defect that caused the landing gear to malfunction, which the parties had stipulated was the cause of the crash. Finally, Long's expert witness testified that the

---

1. We recite the facts from a bench trial "granting due deference to the trial court's resolution of factual disputes" based on its "opportunity ... to judge the credibility of the witnesses." *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 2, 70 P.3d 35 (internal quotation marks omitted).

cost to repair the aircraft after the crash exceeded the value of the aircraft.

¶ 7 Stutesman testified at trial that he intended for potential buyers to rely on his representation in the advertisements that the aircraft would have a fresh annual inspection before being sold. Stutesman also testified that he gave Long the logbooks with the intention of inducing Long to rely on the representations therein, including the fact that the aircraft had been certified with a fresh annual inspection as of September 13, 2006. Stutesman admitted that he replaced the aircraft battery with a car battery two days before he sold it to Long, that the aircraft was not airworthy because of this, and that he knew it was a crime or an FAA violation to sell an aircraft that was not airworthy.

¶ 8 Following trial, the court concluded that (1) Long failed to present sufficient evidence to establish a breach of contract claim, (2) Long failed to present sufficient evidence to establish his fraud claim against Hatz, and (3) Long successfully proved his fraud claim against Stutesman.[2] Based on its fraud determination, the trial court entered a judgment against Stutesman for a total of $32,468.35, which award was comprised of $27,700 in principal and $4,768.35 in costs. Stutesman now appeals; Long cross-appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 First, Stutesman challenges the trial court's determination that he was liable for fraud. " 'The findings and judgment should not be disturbed unless this court can say affirmatively and with some degree of assurance that there is no reasonable basis in the evidence that could fairly and rationally support the requisite degree of proof, i.e., by clear and convincing evidence.' " *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 26, 70 P.3d 35 (quoting *Lamb v. Bangart*, 525 P.2d 602, 609 (Utah 1974)).

¶ 10 Second, Stutesman challenges the adequacy of the trial court's factual findings as to the reasonableness element of

fraud. "We review this issue only if it was presented to the trial court in such a way that the trial court had an opportunity to correct any deficiencies in the adequacy of the detail of the findings of fact." *Interstate Income Props., Inc. v. La Jolla Loans, Inc.*, 2011 UT App 188, ¶ 12, 257 P.3d 1073.

¶ 11 Third, Stutesman argues that the trial court erred in its calculation of damages. "Whether the [trial] court applied the correct rule for measuring damages is a question of law that we review for correctness." *Mahana v. Onyx Acceptance Corp.*, 2004 UT 59, ¶ 25, 96 P.3d 893. As part of his damages argument, Stutesman also challenges the trial court's finding that he fraudulently caused any damages. Assessing causation is a question of fact, *see Sampson v. Richins*, 770 P.2d 998, 1006 (Utah Ct.App.), *cert. denied*, 776 P.2d 916 (Utah 1989), and "[a] trial court's findings of fact will not be set aside unless clearly erroneous," *Chen v. Stewart*, 2004 UT 82, ¶ 19, 100 P.3d 1177.

¶ 12 Fourth, Stutesman challenges the trial court's award of costs in the amount of $4,768.35. " '[A] trial court's decision to award the prevailing party its costs will be reviewed under an abuse of discretion standard.' " *Armed Forces*, 2003 UT 14, ¶ 41, 70 P.3d 35 (alteration in original) (quoting *Young v. State*, 2000 UT 91, ¶ 4, 16 P.3d 549).

¶ 13 On cross-appeal, Long first argues that the trial court erred in denying him attorney fees under Utah Code section 78B–5–825. *See* Utah Code Ann. § 78B–5–825(1) (2008) ("In civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith, except under Subsection (2)."). "[W]hether … a claim was brought in bad faith is a question of fact [that] we review … under a clearly erroneous standard." *Edwards v. Powder Mountain Water & Sewer*, 2009 UT App 185, ¶ 13, 214 P.3d 120 (alterations and omissions in original) (internal quotation marks omitted).

---

2. There is no record of the trial court's ruling on Long's conversion claim against Stutesman, and Stutesman does not raise the claim on appeal.

We thus do not discuss the conversion claim further.

¶ 14 Long also challenges the trial court's denial of punitive damages. "Whether punitive damages [should be] awarded is generally a question of fact within the sound discretion of the [fact finder], and will not be disturbed absent an abuse of discretion." *Burton Lumber & Hardware Co. v. Graham*, 2008 UT App 207, ¶ 10, 186 P.3d 1012 (alterations in original) (internal quotation marks omitted).

¶ 15 Finally, Long argues that the trial court erred in determining that he failed to present sufficient evidence to prove that Hatz defrauded him. Again, we will not disturb the trial court's findings and judgment unless we "can say affirmatively and with some degree of assurance that there is no reasonable basis in the evidence that could fairly and rationally support the requisite degree of proof, i.e., by clear and convincing evidence.' " *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 26, 70 P.3d 35 (quoting *Lamb v. Bangart*, 525 P.2d 602, 609 (Utah 1974)).

## ANALYSIS

### I. Fraud Claim Against Stutesman

¶ 16 To establish fraud against Stutesman, Long

> must prove by clear and convincing evidence each of the following elements: "(1) That a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage."

*Franco v. Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 33, 21 P.3d 198 (emphasis omitted) (quoting *Mikkelson v. Quail Valley Realty*, 641 P.2d 124, 126 (Utah 1982)).

### A. Stutesman Failed to Marshal the Evidence in Support of the Trial Court's Fraud Determination.

¶ 17 In support of his argument that the trial court incorrectly concluded that he was liable for fraud, Stutesman contends that (1) he could not have represented that the aircraft had a fresh annual inspection because he fully disclosed to Long the aircraft's defects discovered as a result of the inspection, he had not personally entered any reference to a fresh annual inspection in the logbook, and there was a certificate of annual inspection; (2) in the advertisements he merely promised that the aircraft would have a fresh annual inspection at a later date prior to the sale, which did not amount to a representation of a presently existing fact; (3) he could not have falsely represented that a fresh annual inspection had occurred where, in fact, a fresh annual inspection *had* taken place; (4) he did not intentionally or recklessly misrepresent that a fresh annual inspection had occurred; (5) Long did not reasonably rely on Stutesman's claim of a fresh annual inspection because, prior to the purchase, Long knew that the aircraft had been inspected in September rather than in July; (6) Long could not have relied on the logbooks because federal law prevents buyers from relying on logbooks; and (7) Long did not reasonably rely on Stutesman's representations because Long had been advised of the defects, had been encouraged to hire an independent inspector, and was allowed to personally inspect the aircraft prior to purchasing it.

¶ 18 On appeal, Stutesman purports to challenge only the court's legal conclusion that he defrauded Long. Stutesman's arguments to this court indeed challenge the trial court's legal conclusions; however, many of his arguments also challenge the sufficiency of the evidence underlying the trial court's findings of fact.

¶ 19 The court's application of the facts to the elements of fraud and the ultimate legal conclusion is "extremely fact sensitive," *See Chen v. Stewart*, 2004 UT 82, ¶ 20, 100 P.3d 1177. We therefore "give the trial court considerable discretion in determining whether the facts of a particular case

come within the established rule of law." *Id.* "As a result, where the legal standard is extremely fact-sensitive, the appellant has the duty to marshal the evidence." *Id.* ¶ 76. Likewise, when challenging the sufficiency of the evidence to support the court's factual findings, "the challenging party 'must begin by undertaking the arduous and painstaking marshaling process.'" *Kimball v. Kimball,* 2009 UT App 233, ¶ 21, 217 P.3d 733 (quoting *West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1315 (Utah Ct.App.1991)). The marshaling process "requires an appellant to marshal all the evidence in favor of the facts as found by the trial court and then demonstrate that even viewing the evidence in a light most favorable to the court below, the evidence is insufficient to support the findings of fact." *Chen,* 2004 UT 82, ¶ 76, 100 P.3d 1177 (internal quotation marks omitted).

> "In order to properly discharge the duty of marshaling the evidence, the challenger must present, in comprehensive and fastidious order, every scrap of competent evidence introduced at trial which *supports* the very findings the appellant resists. After constructing this magnificent array of supporting evidence, the challenger must ferret out a fatal flaw in the evidence. The gravity of this flaw must be sufficient to convince the appellate court that the court's finding resting upon the evidence is clearly erroneous."

*Kimball,* 2009 UT App 233, ¶ 21, 217 P.3d 733 (emphasis in original) (quoting *Majestic Inv.,* 818 P.2d at 1315). "If [the] appellant[ ] ... fail[s] to properly marshal the evidence, we assume that the evidence supports the trial court's findings." *Chen,* 2004 UT 82, ¶ 80, 100 P.3d 1177.

¶ 20 We decline to disturb any of the trial court's factual findings because Stutesman has failed to sufficiently marshal the evidence on appeal. In particular, Stutesman failed to present the trial court's findings detailing his own trial testimony that he had expected potential buyers to rely on his representations that the aircraft would have a fresh annual inspection, that the aircraft was not airworthy at the time he sold it to Long, and that he knew it was a crime or a FAA violation to sell an unairworthy aircraft.

Stutesman also failed to marshal Long's testimony that Stutesman had replaced the battery in the aircraft with a car battery but failed to disclose this to Long. Finally, Stutesman did not marshal the uncontroverted evidence that, had a proper fresh annual inspection been performed, the problem with the landing gear, which caused the crash, would have been discovered.

¶ 21 Instead of "present[ing] the evidence [supporting the findings] in a light most favorable to the trial court," *id.* ¶ 78, Stutesman merely reargues his case, *see generally id.* ¶ 77 ("What appellants cannot do is merely re-argue the factual case they presented in the trial court."). Moreover, Stutesman failed to demonstrate that a "fatal flaw" exists in the supporting evidence, *see Kimball,* 2009 UT App 233, ¶ 21, 217 P.3d 733, or that the court's "findings contradict the clear weight of the evidence," *see Chen,* 2004 UT 82, ¶ 78, 100 P.3d 1177. Because Stutesman failed to marshal the evidence or point to any insufficiency of evidence supporting the court's findings, we accept the court's factual findings, and based on these findings, we proceed to our review of the correctness of the trial court's ultimate determination that Long proved fraud. *See id.* ¶ 80.

¶ 22 The trial court found that Stutesman represented in the advertisements that the aircraft would have a fresh annual inspection and that, by giving Long the certified logbooks, Stutesman represented that the aircraft in fact had a fresh annual inspection. The trial court found that an accurate annual inspection had not been performed and that Stutesman knew that his representations were false because he knew the aircraft was not airworthy. Further, the trial court found that Stutesman wanted Long to rely on those representations, that Long indeed relied and acted on them, and that Long was damaged as a result. The trial court failed to make findings of fact regarding the essential element of reasonableness. *See Armed Forces Ins. Exch. v. Harrison,* 2003 UT 14, ¶ 27, 70 P.3d 35 (explaining the trial court's obligation to enter specific and detailed findings on all of the essential elements of fraud). However, as we will explain below, Stutesman failed to preserve his argument that the trial

court's findings were inadequate. Based on the trial court's findings, except for the absent reasonableness findings, we affirm the trial court's determination that Long proved the elements of fraud by clear and convincing evidence.

B. Stutesman Failed to Preserve His Argument That the Trial Court's Findings Were Inadequate.

¶ 23 Stutesman challenges the adequacy of the trial court's findings of fact regarding the reasonableness element of fraud. Stutesman specifically contends that the trial court failed to make a finding of fact that Long "act[ed] reasonably and in ignorance of [the] falsity" of Stutesman's representations concerning the aircraft. *See id.* ¶ 16 (internal quotation marks omitted). However, Stutesman did not present this argument to the trial court and, thus, failed to preserve it for appeal. "[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (alterations in original) (internal quotation marks omitted). "[R]equiring a party to object to the adequacy of the detail of the trial court's findings before appeal allows the trial judge to address and correct, if necessary, the level of detail in his or her findings before the case moves forward." *In re K.F.*, 2009 UT 4, ¶ 62, 201 P.3d 985. Because the trial court did not have an opportunity to rule on this issue, we do not address Stutesman's argument further, and we affirm the trial court's ultimate conclusion of fraud.

## II. Long's Damages

¶ 24 Stutesman next argues that the trial court erred in calculating Long's damages as $27,700, which was the purchase price of the aircraft. Stutesman correctly asserts that under Utah law, the "[m]easure of damages for fraud is [the] difference between [the] value of [the] property purchased and [the] value it would have had if [the] representations were true." *Pace v. Parrish*, 122 Utah 141, 247 P.2d 273, 277 (1952) (internal quotation marks omitted); *see also Dugan v.*

*Jones*, 615 P.2d 1239, 1247 (Utah 1980) ("The proper measure of damages in an action for fraud and deceit is the difference between the value of the property purchased and the value it would have had, if the representations were true, viz., the benefit of the bargain rule."); *Dilworth v. Lauritzen*, 18 Utah 2d 386, 424 P.2d 136, 137–38 (1967) ("Utah follows the majority rule, which is the difference between the actual value of what he received and the value thereof if it had been as represented.").

¶ 25 However, Stutesman misapplies the law to this case. He contends that the trial court should have calculated damages by the difference in cost between the aircraft with an annual inspection and the aircraft without one. According to Stutesman, Long presented no evidence at trial of the value of an aircraft with an accurate annual inspection. Stutesman also argues that because he disclosed the defects discovered during the annual inspection to Long and Long negotiated a lower price for the aircraft, Long received the benefit of his bargain and was, therefore, not damaged. We conclude that the trial court properly awarded damages equal to the amount of the purchase price of the aircraft because, as the trial court found based on the testimony of Long's expert witness, the cost to repair the aircraft after the crash exceeded the value of the aircraft. The trial court found that if an annual inspection had properly occurred, the landing gear defects would have been discovered and the aircraft would not have crashed. The difference between the actual value of what Long received—the defective aircraft—and the value of the aircraft if it had been airworthy as represented—was the purchase price. We therefore conclude that the trial court awarded the correct amount of damages.

¶ 26 Stutesman also argues that the trial court erred in awarding damages because there is no causal connection between the fraudulent misrepresentation of a fresh annual inspection and the subsequent crash. He argues that a fresh annual inspection is not a guarantee of "airworthiness," that there is no evidence that the defects discovered in the fresh annual inspection caused the crash, and

that there is no evidence of what caused the landing gear to malfunction.

¶ 27 Here, Stutesman challenges not the trial court's *measure* of damages but instead the trial court's finding that Stutesman fraudulently *caused* the awarded damages, a finding that was inherent in the court's damages award. "Whether causation has been established is a question of fact." *Sampson v. Richins*, 770 P.2d 998, 1006 (Utah Ct. App.), *cert. denied*, 776 P.2d 916 (Utah 1989). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Utah R. Civ. P. 52(a).

¶ 28 The trial court expressly found, and Stutesman has not sufficiently challenged, that "[Long's expert] ... testified [that] the annual inspection was not done properly" and that, had it been done properly, it "would have disclosed defects which caused the landing gear to not function properly." Furthermore, the court recognized the parties' stipulation that "[t]he cause of the crash was a malfunction in the landing gear of the aircraft." We cannot say that the findings were clearly erroneous, and although Stutesman now presents evidence on appeal challenging this conclusion, we may not reweigh the evidence that was presented at trial. We therefore affirm the trial court's damage award.

### III.  Award of Costs

¶ 29 Stutesman next argues that the trial court erred in awarding costs and disbursements in the amount of $4,768.35 because the majority of these costs are not recoverable under the Utah Rules of Civil Procedure.[3] He specifically states that the costs awarded to Long should be limited to $661.46 for Stutesman's deposition, plus the applicable court filing fee, process server fee, and witness fees not to exceed the rule, but should not include all other expert witness fees, mail

expenses, travel expenses, or any other non-taxable expenses.

¶ 30 The trial court awarded Long costs for the expenses he incurred in taking the depositions of Hatz and Stutesman, for three expert witnesses, for service of process, and for mediation. The court noted that its award was limited to "any fees paid to witnesses as required by law." Long provided an affidavit presenting, and the trial court approved, $2,423.63, $225, and $575 to the three expert witnesses. The trial court denied Long's request for costs for many of the other expenses that Stutesman now challenges. Therefore, the only costs at issue are expenses related to Hatz's deposition and to the mediation and the amount of expert witness fees.

¶ 31 However, in his briefing Stutesman does not clearly articulate or provide legal support for why Hatz's deposition or the mediation expenses are nontaxable costs. According, we decline to address those specific costs. *See* Utah R.App. P. 24(a)(9) (stating that an appellant's "argument shall contain [his] contentions and reasons ... with respect to the issues presented ... with citations to the authorities, statutes, and parts of the record relied on"); *Valcarce v. Fitzgerald*, 961 P.2d 305, 313 (Utah 1998) ("It is well established that an appellate court will decline to consider an argument that a party has failed to adequately brief."). We address only whether the trial court abused its discretion in the amount it assessed Stutesman for expert witness fees. *See Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 41, 70 P.3d 35.

¶ 32 "A prevailing party's costs may be recovered under rule 54(d)(1) of the Utah Rules of Civil Procedure," *id.* ¶ 42, which is to say that "[e]xcept when express provision therefor is made either in a statute of this state or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs," Utah R. Civ. P. 54(d)(1). "Costs are defined as 'those fees which are required to be paid to the

---

3. Stutesman also seems to argue in his reply that the court should have denied Long's costs because in his motion for costs, Long failed to differentiate between his successful and unsuccessful claims. Stutesman does not clearly articulate or develop this argument and we therefore decline to address it further. *See* Utah R.App. P. 24(a)(9).

court and to witnesses, and for which the statutes authorize to be included in the judgment.'" *Stevensen 3rd E., LC v. Watts,* 2009 UT App 137, ¶ 63, 210 P.3d 977 (quoting *Frampton v. Wilson,* 605 P.2d 771, 774 (Utah 1980)). "Thus, witness fees ... are chargeable as costs but only in accordance with the fee schedule set by statute." *Id.* (internal quotation marks omitted). The fees for the expert witnesses "[are] limited to a stated daily rate plus reimbursement for mileage." *See Armed Forces,* 2003 UT 14, ¶ 42, 70 P.3d 35 (citing Utah Code Ann. § 78-46-28 (2002) (current version at Utah Code Ann. § 78B-1-119 (2008))). Because the trial court approved amounts in excess of those authorized by statute, we reverse the trial court's award of expert witness costs and remand for a proper calculation of the costs pursuant to Utah Code section 78B-1-119.

## IV.  Long's Attorney Fees

¶ 33 On cross-appeal, Long argues that the trial court erred in denying him attorney fees under Utah Code section 78B-5-825 because Stutesman's defense was without merit and was made in bad faith. The trial court denied Long's request for his attorney fees under section 78B-5-825 and determined that there was no basis to find bad faith in Stutesman's defense of Long's claims.

¶ 34 Long argues that the trial court necessarily found that Stutesman's defense was without merit and was made in bad faith because the evidence supported the trial court's findings and ultimate conclusion that Stutesman was liable for fraud. Long misapprehends the statute. As the trial court indicated, and as stated in the statute, Stutesman's *defense* must have been meritless and presented in bad faith. *See* Utah Code Ann. § 78B-5-825(1) (2008) ("In civil actions, the court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith, except under Subsection (2).").

4.  Contrary to Stutesman's contention, Long both adequately pleaded and preserved his prayer of

¶ 35 Rather than explaining how Stutesman's defense of the fraud claim was without merit and asserted in bad faith, Long focuses his argument on the fraudulent actions relevant to the underlying litigation. "The trial [court] did not make any finding that [Stutesman] was untruthful *during* the litigation" and, in fact, made findings that the defense he presented at trial was *not* made in bad faith. *See Hopkins v. Hales,* 2008 UT App 95, ¶ 12, 182 P.3d 402 (emphases added). As this court determined in *Hopkins v. Hales,* 2008 UT App 95, 182 P.3d 402, "the trial court's finding of bad faith does not link the bad faith conduct to the litigation. The court's bad faith findings identify only pre-litigation conduct. This is not the type of bad faith required for the award of attorney fees under Utah Code section 78-27-56(1)." *Id.* ¶ 11 (citing Utah Code Ann. § 78-27-56(1) (current version at Utah Code Ann. § 78B-5-825(1) (2008))). Such was the case here. We therefore affirm the trial court's denial of attorney fees to Long.

## V.  Punitive Damages

¶ 36 Long also appeals the trial court's denial of his request for punitive damages. Long contends that the trial court should have awarded him punitive damages because it concluded that Stutesman intentionally defrauded him.[4]

> Except as otherwise provided by statute, punitive damages *may* be awarded only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others.

Utah Code Ann. § 78B-8-201(1)(a) (Supp. 2011) (emphasis added). Even if the trial court determined that Stutesman's actions were the result of willful and malicious or intentionally fraudulent conduct, it has discretion to award punitive damages and, likewise, as in this case, to deny them. *See*

relief for punitive damages.

*White v. Randall,* 2007 UT App 45, ¶ 23, 156 P.3d 849. "Absent an abuse of that discretion, we will not reverse a trial court's decision not to award punitive damages." *Id.* Long points to the trial court's findings that Stutesman intended for Long to rely on Stutesman's false representations and to induce Long to purchase the aircraft that Stutesman knew was not airworthy. In this, Long highlights the trial court's findings supporting its fraud determination, but he fails to demonstrate that the court abused its discretion in not awarding punitive damages. We therefore affirm the trial court's denial of punitive damages.

## VI. Fraud Claim Against Hatz

¶ 37 Finally, Long argues that the trial court erred by concluding that he failed to establish a fraud claim against Hatz. We will not disturb the trial court's findings and judgment " 'unless [we] can say affirmatively and with some degree of assurance that there is no reasonable basis in the evidence that could fairly and rationally support the requisite degree of proof, i.e., by clear and convincing evidence.' " *Armed Forces Ins. Exch. v. Harrison,* 2003 UT 14, ¶ 26, 70 P.3d 35 (quoting *Lamb v. Bangart,* 525 P.2d 602, 609 (Utah 1974)). In order to challenge the trial court's findings, Long must first "marshal all the evidence in favor of the facts as found by the trial court and then demonstrate that even viewing the evidence in a light most favorable to the court below, the evidence is insufficient to support the findings of fact." *Chen v. Stewart,* 2004 UT 82, ¶ 76, 100 P.3d 1177 (internal quotation marks omitted).

¶ 38 The trial court found that "Hatz was not a party to the contract," "Hatz intended to be paid ... for inspecting the aircraft," "Hatz has never had any conversation, telephonic or otherwise, with [Long] regarding the sale or condition of the aircraft or regarding any other subject," and "Hatz has never participated, engaged in or provided any written communication whatsoever that was directed specifically to [Long]." Based on these findings, the trial court determined that Long did not prove all of the elements to sustain his fraud claim against Hatz: "[T]he [c]ourt rules that [Long] has not presented

sufficient evidence to establish a fraud claim against ... Hatz. Specifically, there is no evidence that ... Hatz's representations were intended or put forth for the purpose of inducing [Long] to act upon them."

¶ 39 Instead of satisfying his marshaling burden, Long points to a contradictory finding that "buyers of aircrafts do rely upon an airplane's logbooks and information therein." He also cites Hatz's testimony that false inspection records could mislead someone and to the fact that Long did in fact rely on these records. However, Long fails to marshal the evidence supporting the trial court's finding that Hatz had not intended to induce Long to act on the representations. Long therefore also fails to demonstrate that the evidence is insufficient to support the finding.

¶ 40 We conclude that not only did Long fail to marshal the evidence, but the evidence also sufficiently supports the court's finding that Hatz had not intended to induce Long to act on the representations made in the logbooks because, as opposed to selling the aircraft, Hatz merely conducted the inspection on the aircraft. And, "there is no reasonable basis in the evidence that could fairly and rationally support the requisite degree of proof, i.e., by clear and convincing evidence," *see Armed Forces,* 2003 UT 14, ¶ 26, 70 P.3d 35 (internal quotation marks omitted), that Hatz defrauded Long. Thus, we will not disturb the trial court's decision.

## CONCLUSION

¶ 41 Stutesman asserts that the trial court incorrectly found him liable for fraud. In this fact-intensive inquiry, Stutesman was obligated to marshal the evidence supporting the trial court's findings. Because Stutesman has failed to marshal the evidence, we accept the court's findings. Based on the court's findings, and because Stutesman failed to preserve his argument concerning the absence of findings on the reasonableness element, we affirm the court's fraud determination. Stutesman also challenges the trial court's award of damages and costs to Long. Where the trial court's findings regarding damages are not clearly erroneous, we will not reweigh the evidence. We therefore af-

188

firm the damages award. As to the trial court's award of costs to Long for expert witnesses, we reverse and remand for the trial court to properly calculate these costs pursuant to statute.

¶ 42 In his cross-appeal, Long challenges the trial court's denial of attorney fees and punitive damages. We affirm the court's denial of attorney fees because the trial court did not find bad faith associated with Stutesman's defense of Long's fraud claim, and we affirm the court's denial of punitive damages because the court did not abuse its discretion in choosing not to award punitive damages. Finally, we affirm the trial court's finding that Hatz did not defraud Long because Long failed to marshal the evidence.

¶ 43 WE CONCUR: WILLIAM A. THORNE JR. and J. FREDERIC VOROS JR., Judges