**2016 UT App 14**

# THE UTAH COURT OF APPEALS

DENNIS BELNAP, JENNIFER ABEL, ZACHARY COLLETT, ALICIA
BRIERLEY, AND DEREK BELNAP,
Appellants,
*v.*
JOSEPH GRAHAM,
Appellee.

Opinion
No. 20140979-CA
Filed January 22, 2016

Second District Court, Ogden Department
The Honorable Scott M. Hadley
No. 100906102

S. Brook Millard, Attorney for Appellants

Robert G. Wright, Brandon B. Hobbs, and Zachary E.
Peterson, Attorneys for Appellee

JUSTICE JOHN A. PEARCE authored this Opinion, in which JUDGE
MICHELE M. CHRISTIANSEN and SENIOR JUDGE RUSSELL W. BENCH
concurred.[1]

PEARCE, Justice:

¶1 Dennis Belnap, Jennifer Abel, Zachary Collett, Alicia
Brierley, and Derek Belnap brought this wrongful death and
personal injury action against Ogden Regional Medical Center
(ORMC); Joseph Graham, M.D.; and other, unknown

---

1. Justice John A. Pearce participated in this case as a member of
the Utah Court of Appeals. He became a member of the Utah
Supreme Court before this decision issued. Senior Judge Russell
W. Bench sat by special assignment as authorized by law. *See
generally* Utah R. Jud. Admin. 11-201(6).

defendants, following the untimely death of Patricia Belnap. The district court granted Graham's motion for summary judgment on the claims against him after concluding that the plaintiffs had failed to provide admissible evidence to create a question of fact with regard to those claims. We affirm.

BACKGROUND

¶2      On January 4, 2008, fifty-three-year-old Patricia Belnap (Patricia) underwent heart valve replacement surgery at ORMC. Graham performed the surgery and was Patricia's post-surgery treating physician. Initially, Patricia's recovery at ORMC was relatively uneventful, although her ongoing low blood platelet count caused some concern. Before she was discharged from ORMC, Patricia allegedly complained to the nursing staff that she was bleeding from her nose and suffering from mouth sores. The nursing staff did not inform Graham of these symptoms, and he authorized Patricia's discharge from ORMC on January 11.

¶3      Upon returning home, Patricia's nose began to bleed again. Patricia returned to ORMC and was readmitted in the early morning hours of January 12. Blood tests revealed that Patricia's blood platelet count was at a dangerously low level, and ORMC administered platelet and blood plasma transfusions. At about 4:00 a.m. on January 13, a nurse discovered Patricia in her room, unresponsive. At 8:05 a.m., Patricia was pronounced dead.

¶4      Patricia's husband and four children (collectively, the Belnaps) sued ORMC, Graham, and unknown defendants for wrongful death and personal injury. The Belnaps' complaint alleged medical negligence in the post-surgical care that the defendants had provided to Patricia. Particularly, the Belnaps advanced two theories of negligence against Graham. First, they alleged that Graham breached his duty of care to properly chart his treatment of Patricia when he failed to make progress notes

on January 8, 9, and 11. Second, the Belnaps alleged that Graham breached his duty of care by failing to examine Patricia on January 11, the day that Graham authorized her discharge from ORMC.

¶5     To support their claims of negligence against Graham, the Belnaps presented the expert testimony of Paul Brown, M.D. In his deposition testimony, Brown conceded that the alleged flaws in Graham's charting of Patricia's care did not cause Patricia's death. However, Brown testified that it was his expert opinion that Graham violated the applicable standard of care by failing to examine Patricia on January 11 before discharging her from ORMC. Brown testified that in his opinion, if Patricia had been given the proper treatment, she would likely not have died.

¶6     Brown testified that there were two bases for his opinion that Graham had failed to examine Patricia on the day of her discharge. First, Brown relied on statements made by Patricia to her husband, Dennis Belnap (Husband), and to her daughter, Alicia Brierley (Daughter): Husband testified that as Patricia was being discharged on January 11, she told Husband that "no doctor had been to see her that morning, that day." Daughter testified that later on January 11, once Patricia was at home, Patricia told Daughter that she had not seen a doctor before she was discharged. Second, Brown relied on the fact that Patricia's medical file did not contain a progress note indicating that Graham had examined her on January 11. Brown testified to his opinion that the absence of such a note was evidence that Graham did not see Patricia on the day of discharge.

¶7     Graham moved for summary judgment, relying on his own deposition testimony that he had examined Patricia on the morning of January 11, between 7:00 and 7:30. Graham argued that the Belnaps' only evidence to the contrary—Patricia's statements to Husband and Daughter and the absence of a progress note—constituted inadmissible hearsay. According to Graham, Brown's expert opinion was premised entirely on the hearsay evidence and could therefore not serve to make a prima

facie showing of medical negligence by Graham. The district court agreed and granted Graham's motion for summary judgment. The district court certified its summary judgment order with regard to the Belnaps' claims against Graham as final pursuant to rule 54(b) of the Utah Rules of Civil Procedure.[2] The Belnaps appeal.

ISSUES AND STANDARDS OF REVIEW

¶8     The Belnaps argue that both Patricia's statements to Husband and Daughter and the absence of a January 11 progress note are admissible because they fall within exceptions to the prohibition on hearsay. Evaluating the admissibility of evidence under the hearsay exceptions "requires the application of facts to the legal requirements of the rule," and the district court "has some discretion in making this determination." *Salt Lake City v.*

---

2. The Belnaps' claims against the remaining parties, including ORMC, remain pending before the district court. The Belnaps opposed Graham's motion to certify his summary judgment order as final, but they did not appeal the district court's decision to certify the order. Nevertheless, "the failure of a party to raise an issue of subject matter jurisdiction is not dispositive," and such an issue "can be raised at any time by either party or by the court." *Kennecott Corp. v. Utah State Tax Comm'n*, 814 P.2d 1099, 1100 (Utah 1991) (citation and internal quotation marks omitted). At oral argument, this court asked a number of questions concerning the district court's decision to certify. After review of the district court's certification decision, as well as the memoranda filed in support of and in opposition to Graham's motion to certify, we are assured that the district court did not err in granting the motion and that we have jurisdiction to consider the merits of the appeal. *See generally id.* at 1104–05; *Central Utah Water Conservancy Dist. v. Upper E. Union Irrigation Co.*, 2013 UT 67, ¶¶ 40–42, 321 P.3d 1113.

*Williams*, 2005 UT App 493, ¶ 10, 128 P.3d 47. The Belnaps further argue that even if this evidence constitutes inadmissible hearsay, Brown could nevertheless rely on it to form his expert opinion and the district court therefore erred by excluding Brown's opinion. "A decision to admit or exclude expert testimony is left to the discretion of the trial court, and that decision will not be reversed unless it constitutes an abuse of discretion." *Ross v. Epic Eng'g, PC*, 2013 UT App 136, ¶ 11, 307 P.3d 576 (citation and internal quotation marks omitted).


ANALYSIS

I. Patricia's Statements

¶9     We first examine the admissibility of Patricia's statements to Husband and Daughter that Graham did not examine her on the day of her discharge from ORMC. The Belnaps concede that the statements constitute hearsay, which is generally inadmissible. *See* Utah R. Evid. 801(c) ("'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."); *id.* R. 802 ("Hearsay is not admissible except as provided by law or by these rules."). However, the Belnaps argue that one or both of the statements qualify under exceptions to the hearsay rule as statements of present sense impression, *see id.* R. 803(1); statements of then-existing mental, emotional, or physical condition, *see id.* R. 803(3); and statements made for medical diagnosis or treatment, *see id.* R. 803(4).

¶10     Rule 803(1) of the Utah Rules of Evidence provides an exception to the rule against hearsay for statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it." *Id.* R. 803(1). The Belnaps argue that Patricia's statements fall within this exception because each "described the event of discharge, at the time of discharge (while) with [Husband], and upon arrival home from discharge

(immediately after) to [Daughter]." However, we agree with the district court's determination that Patricia's statements did not qualify for admission under rule 803(1) for the purpose the Belnaps sought to use them.

¶11 As the district court noted, rule 803(1) contemplates a statement that is made during or immediately after a discrete event or condition, such that the statement is offered to describe the event or condition as the declarant is perceiving it or immediately thereafter. *See* Utah R. Evid. 803(1). The Belnaps argue that the event Patricia was describing in her statements was the "event of discharge." But Graham did not seek summary judgment on the ground that he had examined Patricia at the precise time she was discharged; rather, he presented competent evidence that he had examined her earlier on January 11, between 7:00 and 7:30 a.m. Therefore, to defeat Graham's motion for summary judgment, the Belnaps needed to present admissible evidence that Graham did not examine her during that timeframe,[3] and it is that timeframe that is relevant to our rule 803(1) analysis.

¶12 The record on appeal does not indicate the exact time of Patricia's statements, but Husband testified that he did not even arrive at ORMC on January 11 until "[a]round noon," and Patricia's statement to Daughter occurred even later than that. Thus, Patricia made her statement several hours *after* the purported examination that Graham described in his testimony. This is too great of a time interval to allow the statements to qualify for admission under rule 803(1). *See Scott v. HK Contractors*, 2008 UT App 370, ¶ 8, 196 P.3d 635 (holding that statements made two hours after an event did not qualify for

---

3. Brown, the Belnaps' expert witness, conceded that if Graham examined Patricia "on the day of discharge, as he's testified," then he "met the standard of care by examining and seeing the patient."

admission under rule 803(1), because "the exception requires that the statement be contemporaneous with the event"); *see also State v. Smith*, 909 P.2d 236, 240 (Utah 1995) (noting that rule 803(1)'s "'present sense impression'" exception requires statements to be "strictly contemporaneous" with the event or condition described). For this reason, we affirm the district court's ruling that rule 803(1) does not render Patricia's statements admissible to defeat Graham's summary judgment motion.

¶13    Rule 803(3) of the Utah Rules of Evidence also excepts from the hearsay rule

> statement[s] of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

Utah R. Evid. 803(3). The Belnaps argue that Husband "testified that in conjunction with the release process wherein [Patricia] was describing her condition to the nurse that she stated that she did not see a doctor that day." "As such," the Belnaps argue, "the hearsay statements are within this exception and admissible."

¶14    Again, we agree with the district court that the exception does not apply. Patricia's statements that Graham had not examined her prior to discharge do not, on their face, appear to be the kind of "statement[s] of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health)" that are admissible under rule 803(3). *See* Utah R. Evid. 803(3). However, to the extent that Patricia's statements could qualify as statements of her then-existing state of mind or

personal condition, the Belnaps offered them to refute Graham's testimony that he had examined Patricia on January 11. The statements have evidentiary value for that purpose only because they relay Patricia's reflections on the events (or non-events) of January 11—i.e., her memories or beliefs about whether she had been examined that day. Thus, the Belnaps sought to use Patricia's statements as, in the language of rule 803, "statement[s] of memory or belief [offered] to prove the fact remembered or believed." *See id.* But such statements are expressly excluded from rule 803(3)'s hearsay exception unless they pertain to the validity or terms of the declarant's will (which these statements clearly do not). *See id.*

¶15    Finally, rule 803(4) of the Utah Rules of Evidence allows for the admissibility of hearsay statements that are "made for— and [are] reasonably pertinent to—medical diagnosis or treatment" and describe "medical history; past or present symptoms or sensations; their inception; or their general cause." *Id.* R. 803(4); *see also Hansen v. Heath*, 852 P.2d 977, 979 (Utah 1993) ("If the statement meets both [of rule 803(4)'s] qualifications, it is admissible because of the 'patient's strong motivation to be truthful' when discussing his or her medical condition with a doctor." (quoting Fed. R. Evid. 803(4) advisory committee note)). The Belnaps argue that Patricia's statements satisfy this exception because "the statements were describing [Patricia's] medical history, to wit; no doctor had seen her before she was discharged from the hospital."

¶16    As to this exception, the district court stated that Patricia's statements "pertained to her general concern that she was not examined and not the existence of symptoms and sensations for the purposes of obtaining treatment and diagnosis." The district court also noted that the statements "were not made to health care providers, but instead to family members." Based on these findings, the district court ruled that the exception did not apply.

¶17    We agree with the district court's ultimate ruling, if not every step of its reasoning. Patricia's statements could be

characterized as statements of her (very recent) medical history, and we see no express requirement in rule 803(4) that limits the exception to statements made directly to medical providers, *cf.* Fed. R. Evid. 803(4) advisory committee note ("Under the [medical diagnosis or treatment] exception the statement need not have been made to a physician. Statements to hospital attendants, ambulance drivers, or even members of the family might be included."). Nevertheless, there is nothing about Patricia's statements to suggest that they were made for purposes of medical treatment or diagnosis, as opposed to a more general purpose of informing Husband and Daughter about Patricia's recollection of her experience leading up to her discharge. We cannot say that the district court exceeded its discretion when it found that the statements were not made for purposes of medical diagnosis or treatment as required by rule 803(4).

¶18   In sum, we affirm the district court's rulings that Patricia's hearsay statements to Husband and Daughter that she had not seen a doctor on the day of her discharge do not fall within any identified exception to the hearsay rule. Because Patricia's statements constitute hearsay and no exception applies, the district court properly refused to consider the statements as evidence opposing Graham's summary judgment motion.

## II. The Absence of a January 11 Progress Note

¶19   The Belnaps also seek to use the absence of a January 11 progress note in Patricia's hospital records to demonstrate that Graham had failed to examine Patricia on that day, the day of her discharge. The district court acknowledged that the absence of such a record can be admitted into evidence if its proponent satisfies the requirements of rule 803(6) and rule 803(7) of the Utah Rules of Evidence. However, the district court ruled that the Belnaps had failed to provide adequate foundation under

those rules and determined that the absence of the progress note was therefore inadmissible as hearsay.

¶20    Rule 803(6) of the Utah Rules of Evidence establishes an exception to the rule against hearsay evidence for records of regularly conducted activity.[4] Pursuant to rule 803(6), the hearsay rule does not bar admission of "[a] record of an act, event, condition, opinion, or diagnosis," if

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Utah R. Evid. 803(6).

¶21    Rule 803(7), on which the Belnaps rely, is essentially the inverse of rule 803(6). Whereas rule 803(6) allows a regularly kept record to show that an event occurred, rule 803(7) permits

---

4. The hearsay exception set forth in rule 803(6) of the Utah Rules of Evidence is commonly known as the "business records exception." *See, e.g.*, *Portfolio Recovery Assocs., LLC v. Migliore*, 2013 UT App 255, ¶¶ 7–9, 314 P.3d 1069.

the *absence* of a regularly kept record to show that an event did *not* occur. *See id.* R. 803(7). In order for the absence of a record to be admissible under rule 803(7), it must satisfy the definition set forth in that rule:

> Evidence that a matter is not included in a record described in paragraph (6) if:
> (A) the evidence is admitted to prove that the matter did not occur or exist;
> (B) a record was regularly kept for a matter of that kind; and
> (C) neither the possible source of the information nor other circumstances indicate a lack of trustworthiness.

*Id.*

¶22   Because rule 803(7) incorporates rule 803(6)'s requirements for admission as a "record," the proponent of evidence under rule 803(7) must establish each of the foundational requirements enumerated in rule 803(6). *See id.* (providing for the admissibility of "[e]vidence that a matter is not included in a record *described in paragraph (6)*" (emphasis added)); *cf. United States v. Regner*, 677 F.2d 754, 762 (9th Cir. 1982) (explaining that "testimony as to the nature of recordkeeping" is necessary under rule 803(7) of the Federal Rules of Evidence, because "803(7) is based on 803(6)"); *Morris v. B.C. Olympiakos, SFP*, 721 F. Supp. 2d 546, 551 (S.D. Tex. 2010) ("Since Rule 803(7) is based on Rule 803(6), the testimony of the custodian of the records or qualified witness is required before evidence may be received under Rule 803(7)." (footnote omitted)).

¶23   "The trial judge is given great deference on the issue of the adequacy of foundation." *State v. Sutton*, 707 P.2d 681, 684 (Utah 1985); *see also In re Marquez*, 560 P.2d 342, 342–43 (Utah 1977) (reviewing a foundational ruling for abuse of discretion).

Here, the only foundation the Belnaps offered was Brown's expert opinion that there should have been a note in Patricia's file if Graham had examined her on the day of discharge. Brown testified,

> [M]edically and legally, we need to have notes. And that is what proves you were there, shows the thought process, shows that you did it. So, you know, I think the fact that the medical records business of the discharge summary, the operative notes, three times where you weren't there, either shows a complete lack of concern for the medical record, or in fact you weren't really there.

The district court ruled that Brown's opinion testimony did not satisfy the foundational requirements of rule 803(6) and 803(7). The court's order explained,

> [N]othing in [the Belnaps'] memorandum or attached exhibits demonstrates that these records—specifically medical progress notes—were regularly conducted and kept (as shown by the testimony of the custodian of the records or other qualified witness). Instead, [they] jump right to the absence of a medical progress note, without benefit of the proper procedural foundation which assures the veracity of such an assertion, and rely upon the opinion of an expert to bolster the claim.

(Citation omitted.)

¶24    We cannot say that the district court exceeded the bounds of its discretion in ruling that there was insufficient foundation to admit the evidence of the absent note. Brown's testimony was based on the standard of care for medical providers, i.e., what *should* have happened if Graham and ORMC followed industry practices regarding medical charting. The district court did not

err in determining that Brown's testimony failed to establish the *actual* regular record-keeping practices at ORMC, as required by rule 803(6) and 803(7). It is the unlikelihood of deviation from actual regular practices that underlies the rule 803(7) exception for absent records. The Belnaps presented no testimony as to ORMC's actual recordkeeping practices. In other words, Brown laid a foundation to testify about what ORMC's and Graham's regular practices *should have been* (if they followed industry standards) but did not provide a foundation to testify about what ORMC's and Graham's practices *actually were*. The district court did not abuse its discretion in determining that there was insufficient foundation to admit the absence of a January 11 progress note under rule 803(7).

## III. Brown's Reliance on Hearsay

¶25    Finally, the Belnaps argue that even if Patricia's statements and the absence of a January 11 progress note are not admissible under exceptions to the hearsay rule, Brown could still rely on that evidence to form his expert opinion. The Belnaps rely on rule 703 of the Utah Rules of Evidence, which provides that when an expert bases his or her opinion on facts or data upon which "experts in the particular field would reasonably rely," the facts or data "need not be admissible for the opinion to be admissible." Utah R. Evid. 703.

¶26    The Utah Supreme Court has recognized that "expert evidence is sometimes justifiably based in part on evidence obtained outside the courtroom—even evidence of the adjudicatory facts in dispute." *Edwards v. Didericksen*, 597 P.2d 1328, 1332 n.2 (Utah 1979). "But such evidence is usually the type that an expert relies upon as a matter of course in forming opinions and is sufficiently reliable to warrant an opinion based thereon." *Id.*

¶27    With respect to Patricia's statements to Husband and Daughter, we see nothing about Brown's testimony that would have allowed the district court to conclude that those were the

types of statements upon which a medical expert would ordinarily, reasonably rely. Instead, it appears that the Belnaps were seeking to use Brown's testimony as a "conduit" for the very hearsay statements that they would be prohibited from otherwise introducing. *See State v. Schreuder*, 726 P.2d 1215, 1225 (Utah 1986). The Utah Supreme Court has rejected the proposition that otherwise inadmissible hearsay may come into evidence as a matter of course under the guise of expert testimony. *See id.* ("A psychiatrist or a psychologist of course cannot be made a conduit for testifying in court as to any and all out-of-court statements made."). Here, Brown's reliance on Patricia's statements evokes the expert testimony the supreme court rejected in *Edwards v. Didericksen*, 597 P.2d 1328 (Utah 1979), wherein the court stated that "[t]he interjection of such hearsay testimony, cloaked in the form of an expert opinion, would have been impermissible and potentially highly prejudicial," *id.* at 1332. The district court did not err in disregarding Brown's testimony to the extent it was based on Patricia's statements.

¶28    Brown's inference from the absence of a January 11 progress note presents a somewhat closer issue, in that the inference arises from Brown's application of his medical expertise to materials—Patricia's medical records—that are regularly relied upon by experts in his field. Nevertheless, we affirm the district court's determination that the Belnaps failed to lay an adequate foundation for Brown's interpretation of the absence of a progress note.

¶29    "The determination of whether a proper foundation has been laid for an expert opinion is . . . within the trial court's discretion and will not be disturbed absent a showing of clear abuse." *Vitale ex rel. Christensen v. Belmont Springs*, 916 P.2d 359, 361 (Utah Ct. App. 1996). As the district court noted, Brown's testimony failed to establish that progress notes "were regularly conducted and kept" such that the absence of a note reliably indicated that Graham failed to see Patricia on January 11. In this

context, an adequate foundation could have included knowledgeable testimony that Graham regularly made progress notes each time he examined a patient, that Graham's notes regularly made their way into ORMC's records, and that ORMC regularly maintained those records.[5] Absent such a foundational showing by the Belnaps, we cannot conclude that the district court abused its discretion in ruling that Brown's opinion regarding the absence of a medical progress note lacked adequate foundation.

CONCLUSION

¶30    Patricia's statements that no doctor saw her on the day of her discharge are hearsay and do not qualify for admission under the hearsay exceptions found in rules 803(1), 803(3), and 803(4) of the Utah Rules of Evidence. The absence of a progress note from January 11 is also hearsay, and the Belnaps failed to satisfy the admissibility requirements for such evidence found in rules 803(6) and 803(7) of the Utah Rules of Evidence. Although expert witnesses are not barred from considering some types of hearsay in forming their opinions, the district court did not abuse its discretion in disregarding Brown's testimony in this case.

¶31    Affirmed.

_____

5. We reiterate that Brown's testimony about the industry standard of care—i.e., that these things *should* have happened— is not the same as competent evidence that Graham and ORMC did, in fact, regularly make and keep progress notes regarding the type of patient examinations that Graham claims to have conducted on the morning of Patricia's discharge.