2013 UT App 136

# THE UTAH COURT OF APPEALS

JASON ROSS,
Plaintiff and Appellant,
*v.*
EPIC ENGINEERING, PC,
Defendant and Appellee.

Opinion
No. 20110537-CA
Filed June 20, 2013

Eighth District, Duchesne Department
The Honorable Edwin T. Peterson
No. 080800020

Aaron R. Harris and Stephen Quesenberry,
Attorneys for Appellant
Brent E. Johnson and Rebecca A. Ryon, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES CAROLYN B. MCHUGH and MICHELE M. CHRISTIANSEN
concurred.

ORME, Judge:

¶1    Jason Ross appeals the district court's grant of Epic Engineering's motion in limine that excluded the testimony of Ross's expert. Ross also appeals the district court's subsequent grant of Epic's motion for summary judgment on Ross's breach of contract claim and the resulting dismissal of Ross's complaint with prejudice. We affirm.

## BACKGROUND

¶2    In reviewing the district court's grant of summary judgment, we recite the facts in the light most favorable to Ross. *See Bowers v.*

*Call*, 2011 UT App 143, ¶ 2, 257 P.3d 433 (per curiam). Ross retained Epic's services in 2006 for the design of a small commercial building to be constructed in Roosevelt, Utah. The contract defined the scope of Epic's work to be "structural engineering and drafting of [a] 70' x 100' office and warehouse building" for a fee of $8,250.[1] The plans prepared by Epic included the instruction that "all footings shall bear 12" minimum into original undisturbed earth or on engineered fill." Ross hired his brother as the general contractor for the building, and Ross's father assisted in the excavation of the site for the building's foundation.

¶3      After the building was constructed, it began to settle as a result of unconsolidated fill material underlying the site. Approximately ten months after Ross moved into the building, he notified Epic that the building was settling and that cracks had appeared on the interior and exterior walls. Ross claimed that Epic should have prepared a "soils report" as part of its engineering plans for the building. Epic denied that the contract required it to prepare a soils report and denied that the settling was the result of any inadequacies in the structural engineering plans, as the plans specifically required that "all footings shall bear 12" minimum into original undisturbed earth or on engineered fill."

¶4      Ross filed suit against Epic for breach of contract and negligence, arguing that Epic "breached the contract by failing to properly engineer the plans." Early in the litigation, the parties agreed to jointly commission a geotechnical investigation to determine the cause of the settling. The investigation determined that "[n]umerous pieces of asphalt, concrete, and other debris were

---

1. Epic later contended that the contract contained a second page of terms and conditions, including a limitation of liability and standard of care provision that read: "Epic['s] services shall be rendered without any warranty except that Epic will perform in accordance with a degree of care and skill generally exercised by professionals performing similar work under similar conditions." Ross denied ever receiving page 2 of the contract. For purposes of this appeal, we assume Ross is correct on this point.

observed in each of the test pits" and that the cause of the settling was insufficient compaction. The investigation revealed that "the footings for the . . . building were placed on undocumented, loosely placed fill material. Moisture later infiltrated the subsurface soils next to the structure, causing the fill soil to settle under foundation loads."

¶5     Ross and Epic each retained engineers to provide expert testimony. Ross retained a geotechnical engineer, while Epic secured a structural engineer who is also licensed as a general contractor. In his deposition, Ross's expert explained that his company "provide[s] geotechnical consultation for new construction of buildings [and] dams. . . . We also provide construction materials testing to verify that earthwork and concrete construction is conducted in accordance with the plans and specifications." He further explained that geotechnical engineers evaluate subsurface soil conditions and the potential impacts of new construction, "and from that provide recommendations for design of whatever constructive facility we are evaluating."

¶6     Ross's expert conceded that geotechnical engineers do not actually design buildings and that he did not have an opinion on the standard of care applicable to Epic.[2] Specifically, he stated:

---

2. Ross's expert submitted a proposal to Ross estimating that the cost for him to develop an opinion on the standard of care would be $5,000. The proposal stated:

> In order to provide our professional opinion on the engineer's standard of care, we recommend that the standard of care prevailing at the time in question be established through investigation. Investigation would include the review of reports, records or opinions of other professionals performing the same or similar service at the time in question. With this in mind, we would propose to visit Roosevelt City and Vernal City building departments to review project files.

(continued...)

The standard of care for this project is very important to recognize what happened in that locale with the local engineers at that time. That is not something that we have investigated. Our entire business is based on other engineers calling and asking for guidance and help in the geotechnical area.

He also testified that his personal experience with excavation was limited to operating a backhoe on two occasions: once to grade a road on recreational property that he owns and once to install window wells at his home.

¶7      Epic's expert was a structural engineer and licensed general contractor with "over 36 years of engineering experience in consulting, planning, and designing municipal, commercial and residential projects." In his report, Epic's expert stated that he was retained to provide his professional opinion regarding the standard of care expected of structural engineers on projects like the one in this case. The expert opined:

Geotechnical Reports are very expensive and typically never ordered for residential or light commercial buildings. If the structural engineer is familiar with the soils in a particular area it is common to use the values listed in the International Building Code. Essentially the International Building Code has published minimum values that can be used for construction in lieu of data obtained from a geotechnical report. [Epic's engineer that prepared the plans] testified that he had designed similar projects in Roosevelt using the same design standards.

---

2. (...continued)
When asked at his deposition, the expert said that he did not perform such an investigation because he "never received a notice to proceed."

Epic's expert also concluded that "[t]he existing contours would not necessarily indicate the site had been filled" and "[i]f it was obvious the existing contours indicated the site had been filled I would have expected the City building inspector to alert the contractor/owner he needed to provide a soil report required by the International Building Code[.]"

¶8    At the close of discovery concerning the experts' opinions, Epic moved for summary judgment on both Ross's negligence claim and his contract claim. Epic contended that the negligence claim was barred by Utah's economic loss doctrine and that the breach of contract claim failed because Ross had not presented expert evidence demonstrating that Epic "failed to properly engineer the plans." Epic asserted that Ross's engineering expert was unqualified to offer an opinion as to the applicable standard of care. The court granted Epic's motion in part, dismissing the negligence claim but denying summary judgment on the breach of contract claim.

¶9    After the matter was set for trial on the contract claim, Epic filed a motion in limine, essentially rearguing the points made in its earlier motion for summary judgment and seeking to preclude Ross's expert from testifying. As also argued in the earlier motion for summary judgment, Epic contended that Ross's expert, a geotechnical engineer, "lacked the relevant knowledge, skill, or experience" necessary to testify as to the standard of care expected of structural engineers, contractors, or excavators. At the final pre-trial hearing, the district court heard argument on the motion in limine. Ross objected because the deadline to respond to the motion had not yet passed.[3] After argument, the district court granted Epic's motion, stating, "This expert isn't going to be able to testify to the standard of care. I mean it's very clear that he in his

3. The district court apparently believed, albeit mistakenly, that there was a five-day deadline for a party to file a response to a motion in limine. *See* Utah R. Civ. P. 7(c)(1) ("Within ten days after service of the motion and supporting memorandum, a party opposing the motion shall file a memorandum in opposition.").

deposition said he wasn't asked to make that analysis. He would be testifying to something that is not relevant to the case[.]" The court also concluded that Ross's expert's opinion that "a machine operator or contractor wouldn't necessarily be able to determine if the soil they were digging into was native or fill" was contrary to Utah law. *See Smith v. Frandsen*, 2004 UT 55, ¶¶ 18–19, 94 P.3d 919 (explaining that the law deems a contractor to have a high degree of specialized knowledge, including "familiar[ity] with conditions in the subsurface of the ground").

¶10 The court then, sua sponte, reopened the motion for partial summary judgment on the breach of contract claim. The court clarified, "The reason the Court did not grant summary judgment initially on the first issue was . . . the proffer that the expert[s] would disagree on critical issues. They don't." The court then granted the motion, effectively eliminating all of Ross's claims, and it dismissed Ross's complaint with prejudice. Ross appeals.

ISSUES AND STANDARDS OF REVIEW

¶11 Ross contends that the district court incorrectly granted Epic's motion in limine, which effectively precluded the introduction of his expert's testimony. "A decision to admit or exclude expert testimony is left to the discretion of the trial court, and that decision will not be reversed unless it constitutes an abuse of discretion." *State v. Holm*, 2006 UT 31, ¶ 89, 137 P.3d 726 (citation omitted). "Our review of the district court's exercise of its discretion includes review to ensure that no mistakes of law affected a lower court's use of its discretion." *Eskelson ex rel. Eskelson v. Davis Hosp. & Med. Ctr.*, 2010 UT 59, ¶ 5, 242 P.3d 762 (citation and internal quotation marks omitted).

¶12 Ross also argues that the district court erred when it decided Epic's motion in limine before the expiration of the time allowed for him to respond under the Utah Rules of Civil Procedure. "We review the interpretation and application of a rule of procedure for correctness." *Edwards v. Powder Mountain Water & Sewer*, 2009 UT App 185, ¶ 14, 214 P.3d 120. However, "'[i]n order to justify

reversal[,] the appellant must show error that was substantial and prejudicial in the sense there is at least a reasonable likelihood that in the absence of the error the result would have been different.'" *Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 2011 UT App 232, ¶ 6, 263 P.3d 397 (second alteration in original) (quoting *Ortega v. Thomas*, 383 P.2d 406, 408 (Utah 1963)). *See* Utah R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). Epic does not contend that the district court's interpretation of the applicable rule was correct, but it argues that the error was harmless because the expert's qualifications and all other relevant matters had been fully briefed during the earlier summary judgment proceedings.

¶13     Finally, Ross contends that genuine issues of material fact exist, precluding summary judgment as a matter of law. *See* Utah R. Civ. P. 56(c). "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted). A defendant, as the party moving for summary judgment on an issue on which the plaintiff will have the burden of proof at trial,

> may satisfy its burden on summary judgment by showing, by reference to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there is no genuine issue of material fact. Upon such a showing, . . . the burden then shifts to the *nonmoving* party, who "may not rest upon the mere allegations or denials of the pleadings," but "must set forth specific facts showing that there is a genuine issue for trial."

*Id.* ¶ 18 (emphasis in original) (quoting Utah R. Civ. P. 56(c)).

ANALYSIS

I. The District Court Did Not Abuse Its Discretion When It
Excluded the Testimony of Ross's Expert.

¶14    In his complaint, Ross alleged that Epic "breached the contract by failing to properly engineer the plans." Because the contract was silent on the parties' relevant expectations and obligations, both Ross and Epic retained expert witnesses to provide insight on the appropriate standard of care for a structural engineer.[4]

> Where the average person has little understanding of the duties owed by particular trades or professions, expert testimony must ordinarily be presented to establish the standard of care. For instance, expert testimony has been required to establish the standard of care for medical doctors, architects, *engineers*, insurance brokers, and professional estate executors.

---

4. As a point of clarification, while the term "standard of care" is usually employed in a tort setting, the parties and the district court used it in this contract dispute in reference to the possibility that Epic had an implied obligation to have a soils report prepared as part of its contractual duties in preparing building plans. While we employ the terminology used in the arguments and analysis as posed by the parties and the district court, we would be remiss if we did not point out that this is really more a matter of whether there was an implied contractual term rather than of establishing a "standard of care" as the term is typically used.

> A term is implied-in-law where the contract is silent. An implied-in-law term will be imposed even though the parties may not have intended it and binds the parties to a legally enforceable duty. However, the court can only supply reasonable terms to supplement a contract which is silent.

*Allstate Enters., Inc. v. Heriford*, 772 P.2d 466, 468 (Utah Ct. App. 1989) (citations omitted).

*Wycalis v. Guardian Title*, 780 P.2d 821, 826 n.8 (Utah Ct. App. 1989) (emphasis added) (citations omitted).

¶15    Ross argues that the district court abused its discretion in excluding the testimony of his expert witness. Rule 702 of the Utah Rules of Evidence specifies that

> a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

Utah R. Evid. 702(a). "The trial court is given discretion under Rule 702 of the Utah Rules of Evidence to determine the admissibility of expert testimony, and to determine if the expert witness is qualified to give an opinion on a particular matter." *Dikeou v. Osborn*, 881 P.2d 943, 947 (Utah Ct. App. 1994) (brackets, citation, and internal quotation marks omitted).

¶16    Ross argued that his expert was qualified to provide testimony about the standard practices of structural engineers because the expert was a licensed engineer. Utah law requires that "the standard of care in a trade or profession generally must be determined by testimony of witnesses in the same trade or profession." *Ortiz v. Geneva Rock Prods., Inc.*, 939 P.2d 1213, 1217 n.2 (Utah Ct. App. 1997) (brackets, citation, and internal quotation marks omitted). But not every engineer is qualified to opine about the standard of care or the standard practices applicable to all other engineers.

¶17    We recognize that "[a]n expert witness belonging to one school may testify against a member of another school once the expert provides sufficient foundation to show that the method of treatment at issue is common to both schools or that the expert is knowledgeable about the standard of care of the other school." *Boice v. Marble*, 1999 UT 71, ¶ 14, 982 P.2d 565. *See also Arnold v.*

*Curtis*, 846 P.2d 1307, 1310 (Utah 1993) (stating that a witness is allowed to testify "when a witness is knowledgeable about the standard of care of another specialty or when the standards of different specialties on the issue in a particular case are the same"). On the other hand, an expert may be excluded if unable to establish a common standard of care. *See, e.g., Burton v. Youngblood*, 711 P.2d 245, 248 (Utah 1985) ("The trial court did not hold that a member of one school cannot testify against a member of another school as a matter of law. It only held that under the facts of this case, the foundation necessary to allow a member of one medical specialty to testify about the standard of care applicable to a member of another medical specialty had not been established.").

¶18    We disagree with Ross's contention that his expert "opined about a standard of care that applies to all engineers, regardless of their specialty." On the contrary, Ross's expert admitted that he was not asked to and did not prepare an opinion as to the standard of care applicable to Epic. The expert acknowledged that geotechnical engineers—of which he is one—do not design buildings and that he would need to conduct an investigation involving the "review of reports, records or opinions of other professionals performing the same or similar service at the time in question" in order to develop an opinion on the standard of care applicable here. An opinion developed through such an undertaking would not be the result of his "knowledge, skill, experience, training, or education," as required by the Utah Rules of Evidence. *See* Utah R. Evid. 702(a). *See also Dikeou*, 881 P.2d at 947 ("By definition, an expert [in the context of a medical malpractice claim] is one who possesses a significant depth and breadth of knowledge on a given subject. To allow a doctor in one specialty, retained as an expert witness, to become an 'expert' on the standard of care in a different medical specialty by merely reading and studying the documents in a given case invites confusion, error, and a trial fraught with unreliable testimony."). Therefore, we agree that Ross's expert was not qualified to opine on the standard of care expected of Epic.

¶19     The remainder of Ross's expert's contentions related either to evidence not in dispute or to matters in which he lacked relevant experience or knowledge. For example, Ross's expert stated in his report that an engineer looking at the lot where the building was to be constructed should have been immediately concerned with the obvious fill and the slope on the lot.[5] However, the expert could not testify whether such an observation would then entail a related obligation for Epic under the contract. The expert opined "that a machine operator or contractor wouldn't necessarily be able to determine if the soil they were digging into was native or fill based on personal experience in determining if a soil mass is fill or naturally deposited." But, he was not qualified to offer this opinion because his personal experience in excavation was limited to two small personal projects. His opinion is also contradictory to our Supreme Court's decision in *Smith v. Frandsen*, 2004 UT 55, 94 P.3d 919, which states that "builder-contractors are expected to be familiar with conditions in the subsurface of the ground." *Id.* ¶ 19. *See id.* ¶ 20 ("The facts indicate that [the employee of the general contractor] supervising the excavation and placement of the . . . foundation had 'no prior construction experience.' Nevertheless, [the employee] is deemed to possess the knowledge of a reasonably prudent builder-contractor under similar circumstances, and, as a matter of law, a builder of ordinary prudence would have discovered the insufficient compaction on [the] lot[.]").

¶20     While *Frandsen* involved tort claims, *see id.* ¶ 1, the underlying logic is equally applicable here. Like *Frandsen*, this case involves the determination of where liability should fall when no contractual provision specifies which party has the duty to assess whether a building site can support the planned structure. *See id.* ¶ 27 ("As a policy matter, we believe that our holding will

_____

5. Epic's limited contractual responsibility was to prepare building plans. The contract terms do not include a requirement that Epic inspect the building site. Ross's expert did not testify—and was not qualified to testify—about whether an agreement to prepare such plans necessarily implied an obligation to walk the ground where the building would be constructed.

encourage builders and contractors to exercise that level of care consistent with the expertise legally imputed to them. In addition, our decision preserves the contractual expectations of developers and builder-contractors."). Likewise, we reject Ross's argument that the case "certainly does not stand for the proposition that [Epic] was absolved of a contractual duty based upon a contractor's presence on the property" because Ross failed to provide any admissible evidence or testimony indicating that such a duty was imputed to Epic.[6]

¶21    The remainder of the expert testimony offered by Ross related to undisputed matters concerning the cause of the building's settling, the extent of the settling, and the measures that would be required to stabilize the building. The court was within its discretion to conclude that the expert did not qualify under rule 702 to offer his opinions either because he was unqualified to so opine or because the issue was not in dispute. Accordingly, the district court properly granted Epic's motion in limine that excluded Ross's expert's testimony.

## II. The District Court's Error in Prematurely Ruling on Epic's Motion in Limine Does Not Warrant Reversal.

¶22    It is undisputed that the district court ruled on Epic's motion in limine prior to the deadline provided by rule 7(c) of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 7(c) ("Within ten days

---

6. In essence, Ross claims that Epic, as the structural engineer in this case, was required to have a soils report prepared even though structural engineers are unable to perform such analyses themselves. Ross's expert testified that performing a geotechnical study of the site prior to construction would have cost between $4,000 and $5,000, while Epic's fees under the contract were $8,250. If fully half (or more) of Epic's fee were allocable to outsourcing a soils study, surely the contract would have referred to this important aspect of the contracted-for work and would not have described the scope of work as being limited to the preparation of plans.

after service of the motion and supporting memorandum, a party opposing the motion shall file a memorandum in opposition."). Such an error does not warrant reversal, however, if it is "sufficiently inconsequential so no reasonable likelihood exists that the error affected the outcome of the proceedings." *Jones v. Cyprus Plateau Mining Corp.*, 944 P.2d 357, 360 (Utah 1997). Ross argues that we are in no position to decide "whether or not [his expert] was qualified to testify, because [Ross] had no chance even to create a record of [the expert's] specific qualifications." We disagree. In fact, it was the expert's own testimony that provided the district court with the foundation for its ruling. The expert stated that he did not have an opinion on the relevant standard of care and that he would need to perform an investigation to form such an opinion.

¶23    Likewise, Ross was not prejudiced by the premature ruling because the district court's consideration of the motion in limine involved essentially the same evidence submitted with the earlier summary judgment motion. Ross seemed to acknowledge this fact in arguing against the motion in limine, telling the court, "They made the same argument in their summary judgment motion. The exact same argument was there." While additional time may have allowed Ross to refine his arguments somewhat, he points to nothing new that he would have added had he been permitted the opportunity to submit a memorandum in opposition to the motion. And from all that appears, the pivotal analysis by the district court would have remained the same. *See* Utah R. Civ. P. 61 (stating that an error is harmless and does not warrant disruption of a ruling or order if it "does not affect the substantial rights of the parties"). Therefore, Ross was not prejudiced by the district court's error, and we decline to overturn its ruling.

### III. The District Court Correctly Granted Epic's Motion for Summary Judgment on the Breach of Contract Claim.

¶24    While the district court initially denied Epic's motion for summary judgment on Ross's contract claim, a trial court has the authority to revisit any prior ruling so long as a final judgment has

not been entered in the case. *IHC Health Servs., Inc. v. D&K Mgmt., Inc.*, 2008 UT 73, ¶ 27, 196 P.3d 588. Summary judgment is proper whenever there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). When the district court revisited its ruling on the motion for summary judgment on the breach of contract claim, it explained that "[t]he reason the Court did not grant summary judgment initially on the first issue was . . . the proffer that the expert[s] would disagree on critical issues. They don't." Ross, however, alleges that a standard of care analysis is not essential to his breach of contract claim and granting summary judgment on that basis was inappropriate. Ross seemingly claims that the jury must first determine whether there was a page 2 to the contract, which the parties dispute, and that only then does the standard of care analysis become potentially relevant. In so arguing, Ross overlooks that we must review the facts in a light most favorable to him, including that there was no page 2.

¶25    Without the second page, which Epic claimed defined and limited its liability under the contract, Ross is better positioned to argue that Epic was expected, as an inherent requirement of building plan preparation, to undertake a soil study of the property and assess whether the soils on the building site complied with the standard—"original undisturbed earth or . . . engineered fill"—called for in the plans Epic prepared. But it would still be necessary to determine whether investigation of the soil on the building site was an implied term of the structural engineering contract.[7]

¶26    The crux of the dispute, then, is whether it is generally understood that a structural engineer owes a duty to determine the

---

7. Ross's brother, who served as general contractor on the project and who presumably was not named as a defendant by reason of the family connection, admitted that he was not aware whether a soils analysis had been performed by Epic, which we assume means he never asked to see such a report and that he would not necessarily be able to recognize non-native soil.

type of soil on a building site, such that in a case where the contract is silent on the issue and calls only for the preparation of plans, it is nonetheless reasonable to assume the parties intended to impose such a requirement. Because we have determined that the district court correctly excluded the testimony of Ross's expert witness, the only admissible testimony bearing on the question was that of Epic's expert witness. Epic's expert testified that soil reports are not typically ordered for projects of this size and that it is proper for the engineer preparing the plans to simply incorporate the values listed in the International Building Code, as was done here.[8] Epic's expert's opinion dovetails with the decision in *Smith v. Frandsen*, 2004 UT 55, 94 P.3d 919, which held that "builder-contractors are expected to be familiar with conditions in the subsurface of the ground." *Id.* ¶ 19. Because Ross was unable to "set forth specific facts showing that there is a genuine issue for trial" concerning this issue, *see* Utah R. Civ. P. 56(e), the district court correctly granted summary judgment to Epic.

CONCLUSION

¶27 We conclude that the district court did not abuse its discretion under rule 702 of the Utah Rules of Evidence when it granted Epic's motion in limine excluding the testimony of Ross's expert witness. The district court's procedural error in ruling on the motion before allowing Ross the requisite time to reply under the Utah Rules of Civil Procedure had no impact on the outcome and therefore does not warrant reversal. Because there is no genuine issue of material fact bearing on the pivotal contract issue, the district court correctly granted summary judgment to Epic on the breach of contract claim.

¶28 Affirmed.

───────────

8. Indeed, Epic's expert testified that he had previously designed similar projects in Roosevelt using exactly the same design standards.