**2017 UT App 238**

# THE UTAH COURT OF APPEALS

GORDON HOFHEINS AND BRYAN HOFHEINS,
Appellees,
*v.*
BAJIO MOUNTAIN WEST LLC, MG-TAYLORSVILLE LLC,
AND LOGAN HUNTER,
Appellants.

Opinion
No. 20150983-CA
Filed December 29, 2017

Third District Court, Salt Lake Department
The Honorable Todd M. Shaughnessy
No. 120901276

D. David Lambert, Leslie W. Slaugh, and Richard A.
Roberts, Attorneys for Appellants

David L. Arrington, Peter H. Donaldson, and
Matthew J. Orme, Attorneys for Appellees

JUDGE JILL M. POHLMAN authored this Opinion, in which JUDGES
GREGORY K. ORME and MICHELE M. CHRISTIANSEN concurred.

POHLMAN, Judge:

¶1  Third-party defendants Bajio Mountain West LLC (Bajio), MG-Taylorsville LLC (MGT), and Logan Hunter appeal the trial court's judgment in which they were ordered to indemnify third-party plaintiffs Gordon Hofheins and Bryan Hofheins. We affirm.

## BACKGROUND

¶2  In August 2010, Bajio entered into an Asset Purchase Agreement (the APA) with Bryan Hofheins and Mountain

Pacific Farms (Mountain).[1] Under the terms of the APA, Bajio bought three restaurants that were owned and operated by Mountain and Bryan Hofheins. Each of the restaurants held a lease on the real property at their respective locations, including a property in Taylorsville, Utah (the Taylorsville Property). Also under the terms of the APA, Bajio assumed the leases for the three restaurants and agreed to "'indemnify and hold Seller harmless' from any liabilities or obligations thereunder, including the lease for the restaurant located at the Taylorsville Property" (the Lease).[2] Logan Hunter signed a guaranty (the Guaranty), in which he personally guaranteed Bajio's obligations under the APA.

¶3     In connection with the APA's closing, MGT, a Bajio-related entity, entered into a lease assignment agreement (the Assignment) with Bryan Hofheins and Gordon Hofheins, the named tenants on the Lease. Pursuant to the Assignment, MGT assumed all lease obligations on the Taylorsville Property and agreed to hold the Hofheinses harmless from any and all liability under the Lease. In addition, Bajio, MGT, and Logan Hunter (collectively, the Hunter Parties) repeatedly acknowledged that they were responsible for the rent payments at the Taylorsville Property.

¶4     With the exception of two months of common area maintenance payments, Bajio paid the obligations on the Lease from August 2010 through November 2011. After November 2011, Bajio made no rent or common area maintenance payments. About one month later, Bajio ceased operating the restaurant at the Taylorsville Property.

---

1. Mountain is not a party to the present lawsuit. *See infra* ¶¶ 5–7.

2. The only lease at issue is the lease for the Taylorsville Property. We refer to the lease for that single property as the Lease.

¶5 Bajio and related parties sued the Hofheinses and Mountain in the Fourth District Court in October 2011 (the Fourth District Case). Bajio alleged breach of the APA and breach of an associated settlement agreement between Mountain and Bajio (the Settlement Agreement).

¶6 Later, in February 2012, Redwood Road Retail LLC (Redwood),[3] the landlord of the Taylorsville Property, filed the present action in the Third District Court against the Hofheinses, the named tenants on the Lease, alleging breach of the Lease due to lack of payment. The Hunter Parties did not make payments to the Hofheinses or otherwise indemnify them for the unpaid rent or for Redwood's claims.

¶7 As a result, the Hofheinses subsequently filed a third-party complaint against the Hunter Parties based upon the Hunter Parties' respective obligations under the APA, the Assignment, and the Guaranty. In the third-party complaint, the Hofheinses' theories for breach of contract relied on the Hunter Parties' failure to make payments related to the Taylorsville Property and their failure to indemnify the Hofheinses for their expenses connected to defending against Redwood's first-party claims and for any and all amounts for which they may be held liable for such claims.

¶8 When the Hunter Parties answered the third-party complaint, they asserted a number of affirmative defenses. Those affirmative defenses included, among others, that the third-party claims were "barred to the extent that amounts owed to the Hofheins[es], if any, are offset by their liabilities to [the Hunter Parties]" and that, to the extent the Hofheinses have been damaged, "such damages were a result, either in whole or in part, or were contributed to by reason of their own acts,

---

3. Redwood, while the original plaintiff in this action, is not a party to this appeal.

omissions, breach of the APA, negligence, or intentional conduct." The Hunter Parties did not assert any counterclaims against the Hofheinses.

¶9    Around the same time, and early on in the litigation, Bajio and Logan Hunter moved the court in the Fourth District Case to consolidate the third-party claims raised in the present action with the Fourth District Case. The court denied that request.

¶10    Thereafter, in the present action, the Hunter Parties moved for leave to amend their answer and to file counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory judgment.[4] They allowed their motion to languish, however, and did not submit it for decision until over a year later. The trial court ultimately denied the motion as untimely and prejudicial.

¶11    At the same time, the trial court granted summary judgment on the narrow issue of whether the Hunter Parties could rely on the "first breach" defense to the Hofheinses' breach of contract claim.[5] The Hunter Parties had asserted that the Hofheinses could not recover on their breach of contract claim because the Hofheinses had breached the agreements first.

---

4. Within two months of filing this motion and before the trial court ruled on it, the Hunter Parties affirmed in a separate filing that they "ha[d] not asserted any affirmative claims in this action."

5. "[U]nder the first breach rule a party first guilty of a substantial or material breach of contract cannot complain if the other party thereafter refuses to perform. He can neither insist on performance by the other party nor maintain an action against the other party for a subsequent failure to perform." *CCD, LC v. Millsap*, 2005 UT 42, ¶ 29, 116 P.3d 366 (citations and internal quotation marks omitted).

The Hunter Parties premised this assertion on the Hofheinses' alleged failure to obtain the landlord's consent to transfer the Lease. Under this theory, once the Hofheinses had breached the agreements, the Hunter Parties would have had no obligation to fulfill their side of the bargains. But the trial court ruled that, as a matter of law, "because [the Hunter Parties] elected to sue for damages under the contract rather than rescission of the contract, [the Hunter Parties] may not insulate [themselves] from liability from [their] own breach under the first breach rule." In other words, the court ruled that the Hunter Parties' "decision to retain the benefit of the bargain precludes [their] argument that [their] subsequent breach was excused." The trial court later clarified that while the Hunter Parties "may not rely on the first breach rule as a defense to the Hofheinses' claim for indemnification," they retained their ability to "invoke [their] other defenses."

¶12   The Hunter Parties filed a motion for summary judgment on a purported claim for breach of the implied covenant of good faith and fair dealing. In response, the Hofheinses moved to strike the Hunter Parties' motion, arguing that it was improper because the Hunter Parties had not asserted any claims against the Hofheinses in the present action, including a claim for breach of the implied covenant of good faith and fair dealing. On September 15, 2014, the trial court agreed with the Hofheinses and struck the Hunter Parties' motion for summary judgment. Given that the court had previously denied the Hunter Parties' request to file a counterclaim, the court reasoned that the Hunter Parties had no cognizable causes of action. The court also stated that "the granting of the Hofheinses' Motion to Strike is not a ruling on the merits of any claims or defenses in this case."

¶13   Notwithstanding this decision, the Hunter Parties filed a second motion for summary judgment, again seeking a determination that the Hofheinses had breached the covenant of good faith and fair dealing. Again, the Hofheinses responded by moving to strike the motion. The trial court struck the Hunter

Parties' second motion. The court explained that the Hunter Parties' "latest motion for summary judgment [was] akin to a motion for reconsideration of the Court's prior order granting the Hofheinses' motion to strike," and the court "decline[d] to revisit its prior ruling."

¶14   Redwood's first-party claims against the Hofheinses were eventually resolved in favor of Redwood. All parties to this case stipulated to a damage amount of $295,000 on Redwood's claims, exclusive of attorney fees and costs. The trial court then awarded Redwood a total of $132,284.38 in attorney fees and costs, resulting in a total judgment of $427,284.38 (the Redwood Judgment).

¶15   The Hofheinses prepared for trial on their third-party claims by filing several motions in limine. One of those motions sought to exclude any evidence of a purported offset to the obligations that the Hunter Parties allegedly owed to the Hofheinses. Another such motion sought exclusion of "any evidence or argument [the Hunter Parties] may seek to introduce regarding relief in the form of excused performance on the basis of prior material breach by the Hofheinses."

¶16   During the final pretrial conference, the trial court asked the Hunter Parties to explain the defense they intended to rely on at trial. The Hunter Parties responded that their defense would be that "there was a breach of the agreement by a breach of the covenant of good faith and fair dealing" and that, by proving breach, they would "reduce their obligation or eliminate their obligation" to indemnify the Hofheinses. The court then inquired whether their reliance on the alleged breach was not for the purpose of excusing performance but rather was the basis for an offset, to which the Hunter Parties responded, "Yes . . . it's all about offset." The court later tried to clarify, asking the Hunter Parties, "So the evidence that you seek to admit about a prior material breach is . . . the factual predicate to the amounts that you claim are an offset against the indemnification obligation[?]"

The Hunter Parties responded, "Exactly . . . there was a breach of this agreement that caused damage that's an offset to any obligation that we have."

¶17    After the final pretrial conference, the trial court issued an order defining the scope of the trial (the August 2015 Order). Pursuant to the August 2015 Order, the issues before the court were limited to (1) whether the Hunter Parties were liable to indemnify the Hofheinses under the APA for part or all of the Redwood Judgment; (2) whether the Redwood Judgment, for which indemnification was sought, included any past due rents for which the Hunter Parties were not responsible; (3) whether the Redwood Judgment included any costs or attorney fees for which the Hunter Parties were not responsible; and (4) whether any party was entitled to costs and attorney fees related to the third-party complaint.

¶18    The August 2015 Order also recognized that, in the event the Hofheinses prevailed on their indemnification claim and were awarded damages, the Hunter Parties asserted that they were entitled to an offset or credit against such damages based on their claims that the Hofheinses, or those in privity with them, breached the APA, related agreements, or the implied covenant of good faith and fair dealing. The court explained that the "factual basis for these claims of offset or credit is unrelated to the narrow issues raised by [Redwood's] complaint . . . and the narrow indemnification issues raised in [the Hofheinses'] third party complaint." At the same time, the court noted the fact that some or all of these claims were the subject of the "substantially broader" litigation in the Fourth District Court.[6]

---

6. In the Fourth District Case, the district court ruled that Bajio and Logan Hunter could "seek to offset amounts due and owing by proving that [they have] valid claims against [Mountain] and resulting damages."

¶19    In the interest of fairness and judicial economy, and particularly "to avoid . . . the risk that trial of the offset/credit issues . . . [would] impinge on matters pending in the Fourth District Case," the August 2015 Order stated that the trial court declined to consider the Hunter Parties' claims of offset or credit. The trial court explained that those matters could and should be addressed in a forum better suited to resolve them—the Fourth District Court, which "has the ability, in the context of the broader dispute between these parties, to make any adjustments to an award in that case that may be necessary as a result of the outcome in this case." Because of its concern that the parties could rely on its refusal to hear the offset/credit issue to argue that such issues could not be considered in the Fourth District Court, the court clarified that it did not intend the August 2015 Order to have res judicata effect, explaining,

> As discussed at the Final Pretrial Conference, the court expressed its concern that one or both of the parties could use the court's ruling [declining to consider the Hunter Parties' claims of offset or credit] in the Fourth District Case to argue that, under principles of res judicata, such issues could no longer be heard in that case. That too would be contrary to the principles of judicial economy and efficiency . . . . Accordingly, to the extent either party successfully argues in the Fourth District Case that the court's ruling [regarding the offset or credit issue] operates as res judicata on claims that this court is declining to hear, that result would be contrary to the purpose of this pretrial order and the court would, under those circumstances, entertain an appropriate post-judgment motion to address the issue.

The August 2015 Order thus left open the possibility that the parties could file post-judgment motions should the Fourth District Court apply res judicata principles in the other case to

decline hearing the issue of the Hunter Parties' claimed offset or credit.

¶20    The Hofheinses' third-party claims were tried to the court. At the close of the Hofheinses' case-in-chief, the Hunter Parties moved to dismiss under rule 41(b) of the Utah Rules of Civil Procedure,[7] arguing that the Hofheinses' claims should be dismissed because the Hofheinses had failed to tender their defense to the Hunter Parties.[8] The trial court denied the Hunter Parties' motion for four reasons. First, the court reasoned that the agreements at issue "are silent with respect to whether the [Hofheinses] maintained an obligation to tender a defense or provide notice of a pending lawsuit or potential liability."

---

7. At the time of trial, rule 41(b) provided that, "[a]fter the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." Utah R. Civ. P. 41(b) (2015). "The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence." *Id.*

8. "'Tender of defense' describes a common-law practice in which a person or entity against whom an action is brought gives notice of the suit to a person or entity that may ultimately be liable for payment of the judgment, by contract or by implication." *Summerhaze Co. v. FDIC*, 2014 UT 28, ¶ 3 n.2, 332 P.3d 908 (citing 59 Am. Jur. 2d *Parties* § 241 (2014)). "The purpose is to offer the person who may ultimately be liable 'the opportunity to appear and defend the action,' because the person or entity may be bound by the judgment." *Id.* (quoting 59 Am. Jur. 2d *Parties* § 241 (2014)).

Second, the court determined that "[a] tender of the defense or notice of claims is not a condition precedent" to the Hofheinses' potential recovery. Third, the court concluded that "[t]o the extent a tender or notice was required, the Hofheinses satisfied such obligations by sending letters to [the Hunter Parties'] counsel and asserting third-party claims for indemnification against [the Hunter Parties]." Fourth, the court determined that even had tender or notice been required and not provided, "this does not mean that the Hofheinses would not be entitled to a recover[y]." In other words, "the lack of tender and notice is [not] a defense that would eliminate any indemnification obligation."

¶21   At the close of trial, the court ruled in favor of the Hofheinses on their breach of contract claims. First, the court determined that the APA is a valid and enforceable agreement between Bajio and Bryan Hofheins, and that Bajio had materially breached the APA by failing to satisfy the obligations under the Lease and by failing to indemnify Bryan Hofheins. The court then concluded that Bajio was liable to Bryan Hofheins to the same extent Bryan Hofheins was liable under the Redwood Judgment. Second, and for the same reasons, the court concluded that "Logan Hunter, by virtue of having executed the Guaranty . . . , agreed to guarantee [Bajio's] obligations under the APA, including its indemnification obligation, and by virtue of [Bajio's] breach, Logan Hunter has likewise breached the provisions of the Guaranty." Third, the court determined that the Assignment was a valid and enforceable agreement between MGT and the Hofheinses. The court concluded that the Assignment requires indemnification of the Hofheinses and that MGT had breached the agreement by failing to perform its obligations thereunder and by failing to hold the Hofheinses harmless for the Lease obligations. The court accordingly ruled that "MGT [was] liable to the Hofheinses to the same extent that the Hofheinses [were] liable under the [Redwood Judgment]."

¶22   With respect to the Hunter Parties' defense that the Hofheinses had failed to mitigate their damages, the trial court added that the Hunter Parties could have taken steps to limit liability and that the Hofheinses had taken "reasonable steps to mitigate damages." As a result, the court rejected the Hunter Parties' defense and declined to reduce the amount for which the Hunter Parties were liable.

¶23   The trial court also determined that the APA, the Guaranty, and the Assignment "all contain enforceable attorney fees provisions." Pursuant to those provisions, the court determined that the Hofheinses were entitled to recover their reasonable attorney fees and costs, which amounted to $401,787.04 and $10,820.16, respectively.

¶24   Thereafter, the trial court entered final judgment on the third-party claims. The court awarded judgment in favor of the Hofheinses and against the Hunter Parties for $427,284.38, the full amount of the Redwood Judgment, and for $412,607.20 to cover attorney fees and costs. The Hunter Parties then filed this appeal.

¶25   While this appeal was pending, the Fourth District Court ruled on Bajio's and Logan Hunter's claims in the other case, and ruled as a matter of law that Bryan Hofheins and Mountain had breached the implied covenant of good faith and fair dealing by entering into an agreement with another entity that negated the purpose of the Settlement Agreement between Bajio and Mountain. *See supra* ¶ 5. On the issue of damages, the Fourth District Court entered judgment in favor of Bajio and Logan Hunter for nominal damages of one dollar.

ISSUES AND STANDARDS OF REVIEW

¶26   On appeal, the Hunter Parties raise two arguments. First, the Hunter Parties contend that the trial court erred in striking

their motions for summary judgment premised on the Hofheinses' alleged breach of the covenant of good faith and fair dealing.[9] The trial court's decision was grounded in its conclusion that a party cannot seek summary judgment in its favor on a non-pleaded claim and that the Hunter Parties had failed to plead the claim that was the subject of their summary judgment motion. This court generally reviews the trial court's "interpretation and application of a rule of [civil] procedure for correctness." *Ross v. Epic Eng'g, PC*, 2013 UT App 136, ¶ 12, 307 P.3d 576 (citation and internal quotation marks omitted). And for this court to reverse, "the appellant must show error that was substantial and prejudicial." *Id.* (citation and internal quotation marks omitted); *see also* Utah R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

¶27 Second, the Hunter Parties contend that the trial court erred in denying their motion to dismiss the action under rule 41(b) of the Utah Rules of Civil Procedure. "When reviewing the denial of a motion for involuntary dismissal [under rule 41(b)], an appellate court should defer to the trial court's findings and inferences under a clearly erroneous standard and review the trial court's conclusions of law for correctness." *Markham v. Bradley*, 2007 UT App 379, ¶ 13, 173 P.3d 865. A finding is clearly erroneous only when it is "against the clear weight of the evidence" or if this court otherwise reaches "a definite and firm conviction that a mistake has been made." *Steinberg v.*

---

9. The Hofheinses interpret the Hunter Parties' first contention on appeal as a challenge to the August 2015 Order that limited the scope of trial. But we will address the issue as presented in the Hunter Parties' opening brief, and we therefore consider whether the trial court erred in striking the Hunter Parties' motions for summary judgment.

*Community Housing Services-Capitol Villa, Ltd.*, 2014 UT App 102, ¶ 5, 326 P.3d 673 (citation and internal quotation marks omitted).

ANALYSIS

I. Striking the Hunter Parties' Motions for Summary Judgment

¶28    The Hunter Parties contend that the trial court erred in striking their motions for summary judgment. Those motions asked the trial court to determine that the Hofheinses had "violat[ed] the covenant of good faith and fair dealing relating to the agreements which are the basis for the claims by [the] Hofheinses against [the Hunter Parties]." The Hunter Parties assert that the trial court's decision striking their motions for summary judgment "had the effect of [their] affirmative defenses not being considered at trial."

¶29    On appeal, the Hunter Parties and the Hofheinses largely focus on the question of whether prejudice flowed from the trial court's granting of the motions to strike. For purposes of our analysis, we assume, without deciding, that the trial court's grant of the motions to strike was in error. We therefore focus on whether the Hunter Parties have sufficiently demonstrated that they were harmed by the grant of the Hofheinses' motions to strike.

¶30    The Hunter Parties assert that the "result of the error in striking [their] motions for summary judgment was that the trial court never considered [the Hofheinses'] breach of the covenant of good faith and fair dealing," which was the Hunter Parties' "main affirmative defense" to the Hofheinses' indemnification claim. They assert that the trial court's error was "compounded by the trial court's pre-trial order" limiting the scope of trial and "preclud[ing the Hunter Parties] from presenting evidence that

[the Hofheinses] breached the settlement agreement."[10] The Hunter Parties further assert that, "[a]t a minimum, [they] should have been allowed to present evidence of [the Hofheinses'] bad acts to offset against the legal obligations owed by [the Hunter Parties] under the Settlement Agreement." The Hunter Parties maintain that while they could not rely on the first breach rule as a defense to the Hofheinses' claim for indemnification, the striking of their motions meant they were "never allowed to invoke . . . other defenses prior to trial or at trial." (Internal quotation marks omitted.)

¶31    The Hofheinses respond that the Hunter Parties' "main defense" was in fact "a claim for breach of the implied covenant of good-faith and fair dealing under [the] Settlement Agreement between [Bajio] and non-party [Mountain]." The Hofheinses further contend that "that claim was never placed at issue in this case" and that the Hunter Parties are attempting to "boot strap in claims that [they] raised in the Fourth District Case."

¶32    Generally, to obtain reversal, "the appellant must show error that was substantial and prejudicial in the sense there is at least a reasonable likelihood that in the absence of the error the result would have been different." *Ross v. Epic Eng'g, PC*, 2013 UT App 136, ¶ 12, 307 P.3d 576 (citation and internal quotation marks omitted); *see also Harris v. Utah Transit Auth.*, 671 P.2d 217, 222 (Utah 1983) ("An error is reversible if there is a reasonable

---

10. While the Hunter Parties argue that the trial court's August 2015 Order compounded its alleged error in striking their motions for summary judgment, we do not read the Hunter Parties' argument as a separate challenge to that order. In framing their appeal, the Hunter Parties requested only that this court review the trial court's granting of the motions to strike and its ruling regarding the Hofheinses' alleged duty to tender. The Hunter Parties did not request we review the scope of the August 2015 Order. Thus we do not separately address it.

likelihood that a more favorable result would have been obtained by the complaining party in the absence of the error."). A claimed error may also be substantial and prejudicial "in the sense that [the appellant] was in some manner deprived of [a] full and fair presentation and consideration of the disputed issues." *Redevelopment Agency of Salt Lake City v. Mitsui Inv. Inc.*, 522 P.2d 1370, 1374 (Utah 1974).

¶33  We are not persuaded that the trial court's striking of the Hunter Parties' motions for summary judgment caused prejudice. The Hunter Parties have not shown that they were deprived of a fair opportunity to litigate their claim that the Hofheinses had breached the implied covenant of good faith and fair dealing, because they have been litigating that claim in the Fourth District Case. Indeed, according to the Hunter Parties, "the Fourth District Court, relying upon the same factual predicate in the companion case, granted partial summary judgment to [the Hunter Parties] and ruled that [the Hofheinses'] actions and misrepresentations breached the covenant of good faith and fair dealing." In contrast to the Fourth District Case, the present action centered on the narrow question of whether the Hunter Parties were required to indemnify the Hofheinses. The present action is, in the Hunter Parties' words, "ancillary" to "the main event" in the Fourth District Court.

¶34  In addition, the Hunter Parties represented to the trial court at the final pretrial conference that their argument about the Hofheinses' alleged breach of the implied covenant of good faith and fair dealing was "all about offset," meaning that the Hunter Parties suffered damages that would offset "any obligation that [the Hunter Parties] have" to indemnify the Hofheinses. This representation to the trial court did not suggest that the breach of the implied covenant could somehow defeat the Hofheinses' indemnification claim against the Hunter Parties.

¶35    And although the trial court ultimately decided not to consider the offset issue in the present action, it tailored its order regarding the scope of trial to ensure that it would not prevent the Hunter Parties from pursuing that issue in the Fourth District Case. The court specifically noted that the Fourth District Court had "the ability, in the context of the broader dispute between these parties, to make any adjustments to an award in that case that may be necessary as a result of the outcome in this case." The court then directed that, if the Fourth District Court applied res judicata principles to the issue of the Hunter Parties' claimed offset, the trial court would entertain appropriate post-judgment motions. Thus, the trial court did not restrict the Hunter Parties from pursuing an offset that they represented derived from the Hofheinses' alleged breach of the implied covenant. In light of these circumstances, we conclude that the Hunter Parties have been able to pursue their claim for breach of the implied covenant of good faith and fair dealing and related offset issues in the Fourth District Case and that therefore the trial court's striking of their motions for summary judgment did not deprive them of a fair opportunity to litigate those issues.

¶36    We also conclude that the Hunter Parties have not shown a reasonable likelihood of a different outcome had the trial court reached the merits of their motions for summary judgment. On appeal, the Hunter Parties suggest that their argument regarding the Hofheinses' alleged breach of the implied covenant of good faith and fair dealing would have defeated the Hunter Parties' indemnification obligation. The Hunter Parties' theory of breach, however, is based on the Hofheinses' alleged conduct that predated the Hunter Parties' breach. Consequently, by all appearances, this theory is a reincarnation of their argument under the first breach rule. Under that rule, *supra* note 5, a plaintiff cannot maintain an action for the defendant's subsequent failure to perform and the defendant thus has a complete defense to the plaintiff's breach of contract claim. *See CCD, LC v. Millsap*, 2005 UT 42, ¶ 29, 116 P.3d 366.

¶37    Here, before their motions for summary judgment on the Hofheinses' alleged breach were at issue, the Hunter Parties had pursued a defense under the first breach rule. But the trial court ruled on partial summary judgment that the Hunter Parties could not rely on the first breach rule as a matter of law.[11] While this order did not obstruct their ability to "invoke [their] other defenses," on appeal, the Hunter Parties have not cited or developed legal authority to demonstrate how the Hofheinses' alleged breach of the implied covenant of good faith and fair dealing would have otherwise excused the Hunter Parties' performance or allowed them to defeat the Hofheinses' indemnification claim. The Hunter Parties thus have not shown how their argument on appeal regarding the Hofheinses' alleged breach is any different from an argument under the first breach rule. Because the Hunter Parties were precluded from asserting that defense even before the trial court struck their motions for summary judgment, the Hunter Parties have not shown a reasonable likelihood of a different outcome had the trial court considered their arguments related to the Hofheinses' alleged breach.

¶38    In sum, we conclude that the Hunter Parties have not shown that any assumed error in the trial court's striking of their motions for summary judgment related to the Hofheinses' alleged breach of the implied covenant of good faith and fair dealing was substantial and prejudicial. Accordingly, we reject this claim of error on appeal.

## II. Denying the Hunter Parties' Rule 41(b) Motion

¶39    The Hunter Parties next contend that the trial court erred in denying their motion to dismiss the Hofheinses' claims under rule 41(b) of the Utah Rules of Civil Procedure. They had

---

11. The Hunter Parties do not challenge this determination on appeal.

premised their motion on the Hofheinses' failure to tender the defense, that is, the Hofheinses' failure to give notice of Redwood's suit against them to the Hunter Parties, who, under the indemnification obligations of the APA, the Guaranty, and the Assignment, could ultimately be liable for payment of any judgment to Redwood.

¶40    In denying the rule 41(b) motion, the trial court concluded that the pertinent agreements "are silent" as to whether the Hofheinses had an obligation to tender a defense. The court then determined that a tender of defense or a notice of claims "is not a condition precedent" to the Hofheinses' potential recovery, and that even had tender or notice been required and not provided, "the lack of tender and notice is [not] a defense that would eliminate any indemnification obligation." On appeal, the Hunter Parties do not dispute that the pertinent agreements make no mention of a duty to tender, and they instead focus their attention on the trial court's rationale that a tender of defense is not a condition precedent that would eliminate the Hunter Parties' indemnification obligation. *See Condition precedent*, Black's Law Dictionary 355 (10th ed. 2014) (defining a "condition precedent" as "[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises").

¶41    The Hunter Parties stake their argument on appeal to the proposition that "the tender of defense is necessarily required to be made in order to impose indemnification obligations," which means, according to the Hunter Parties, that the Hofheinses' alleged failure to tender the defense "precludes [the Hunter Parties] from being required to indemnify [the Hofheinses]." In support, they cite *Summerhaze Co. v. FDIC*, 2014 UT 28, 332 P.3d 908, and assert that *Summerhaze* holds that "a party's failure to tender the defense to a third-party necessarily precludes the party from subsequently seeking indemnification from the same third-party." The Hunter Parties thus contend that, applying *Summerhaze*, the Hofheinses' failure to tender the defense

extinguished the Hunter Parties' obligation to indemnify under the agreements.

¶42 *Summerhaze* does not support the Hunter Parties' contention. In that case, the Utah Supreme Court explained that one purpose of tendering a defense is to provide notice, which allows an indemnitor "to appear and defend the [indemnitee] on claims where the [indemnitee] may ultimately seek to hold the [indemnitor] liable." *See id.* ¶ 37. With respect to the consequences of failing to tender, the supreme court stated that an indemnitee's "[f]ailure to tender a defense '*simply changes the burden of proof* and imposes on the [indemnitee] the necessity of again litigating and establishing that it is entitled to indemnity from the [indemnitor].'" *See id.* (emphasis added) (quoting 42 C.J.S. *Indemnity* § 48 (2013)). The supreme court further explained that, "without a tender of defense, an [indemnitor] may challenge its liability for the judgment, contest the amount of damages, or set forth any other available defense that the [indemnitee] neglected to make." *See id.* Notably, *Summerhaze* does not say or suggest that the indemnitee's failure to tender a defense would release the indemnitor from its indemnification obligation. *See id.* ¶¶ 36–38 (discussing tender of defense).[12] Accordingly, *Summerhaze* would not dictate that the Hofheinses' alleged failure to tender the defense would preclude the Hunter

---

12. The supreme court's discussion in *Summerhaze Co. v. FDIC*, 2014 UT 28, 332 P.3d 908, was in the context of insurance contracts that place on the insurer "a duty to indemnify the insured" and "a duty to defend the insured against a liability claim." *Id.* ¶ 36 (citations and internal quotation marks omitted). As the supreme court explained, the duty to defend "is triggered when the insured tenders the defense." *Id.* (citation and internal quotation marks omitted). Neither side claims that the relevant agreements in this case place an express, independent duty to defend on the Hunter Parties.

Parties from being required to indemnify the Hofheinses. Because the Hunter Parties' reliance on *Summerhaze* is misplaced and because they have not provided any other pertinent authority in support of their position,[13] the Hunter Parties have not demonstrated error in the trial court's denial of their rule 41(b) motion.[14]

¶43     Finally, in connection with their challenge to the denial of their rule 41(b) motion, the Hunter Parties make a related argument that the Hofheinses' "failure to tender the defense

---

13. The Hunter Parties rely heavily on *Hill v. Okay Construction Co.*, 252 N.W.2d 107 (Minn. 1977), a Minnesota case cited by the Utah Supreme Court in *Summerhaze*. *See* 2014 UT 28, ¶ 36 n.82. The Hunter Parties assert that *Hill* stands for the proposition that "'tender of defense is generally a condition precedent to obtaining indemnification.'" (Quoting *Summerhaze*, 2014 UT 28, ¶ 36 n.82 (citing *Hill*, 252 N.W.2d at 121).) They fail to acknowledge, however, that *Hill* states only that tender of defense "is generally a condition precedent to obtaining indemnification *for attorney fees* incurred in [the] defense" of a claim. *Hill*, 252 N.W.2d at 121 (emphasis added). We therefore do not agree that *Summerhaze*'s citation to *Hill* amounted to an adoption of the broader assertion the Hunter Parties argue here.

14. Because we affirm on this basis, we need not address the trial court's alternative determination that even if notice or tender was a prerequisite for indemnification, the Hofheinses satisfied that obligation. In any event, the Hunter Parties fail to demonstrate why the Hofheinses' actions were legally inadequate to constitute a tender of defense. *See Bank of Am. v. Adamson*, 2017 UT 2, ¶ 12, 391 P.3d 196 (explaining that "an appellant who fails to adequately brief an issue will almost certainly fail to carry its burden of persuasion on appeal" (citation and internal quotation marks omitted)).

exacerbated [the Hofheinses'] obligation to mitigate their damages." This argument's basis and the precise relief sought, however, are unclear. Moreover, the Hunter Parties have not adequately addressed, let alone established error in, the trial court's conclusions that the Hofheinses took reasonable steps to mitigate damages and that the Hunter Parties could have taken other steps to limit liability in the case. *See Allen v. Friel*, 2008 UT 56, ¶ 7, 194 P.3d 903 ("If an appellant fails to allege specific errors of the lower court, the appellate court will not seek out errors in the lower court's decision."). We therefore conclude that the Hunter Parties have not carried their burden of persuasion on the subject of mitigation and we do not consider this argument further. *See Bank of Am. v. Adamson*, 2017 UT 2, ¶ 13, 391 P.3d 196 (concluding that "[a]n appellant that fails to devote adequate attention to an issue is almost certainly going to fail to meet its burden of persuasion").

CONCLUSION

¶44    We conclude that the Hunter Parties have not shown that they were prejudiced by the trial court's striking of their motions for summary judgment on the Hofheinses' alleged breach of the implied covenant of good faith and fair dealing. We also conclude that the Hunter Parties have not shown error in the trial court's denial of the rule 41(b) motion based on the Hofheinses' alleged failure to tender the defense to the Hunter Parties. Accordingly, we affirm the trial court's judgment ordering the Hunter Parties to indemnify the Hofheinses.

———————